Tamara S. ROBINSON, Appellant,

v.

Richard Orion UPOLE, Jr., Appellee.

Tamara S. Robinson, Appellee,

v.

Richard Orion Upole, Jr., Appellant.

Superior Court of Pennsylvania.

Argued March 1, 2000.
Filed April 3, 2000.

---

John B. Frock, West Chester, for Robinson.

Robert J. LaRocca, Philadelphia, for Upole.

Before McEWEN, President Judge, and JOHNSON and OLSZEWSKI, JJ.

OLSZEWSKI, J.:

¶ 1 These related appeals are from the final judgment granting judgment n.o.v. in favor of defendant on non-economic damages and entering judgment in favor of plaintiff on economic damages. The case arose from a car accident after which Tamara S. Robinson [Robinson] claimed injuries allegedly caused by Richard Orion Upole [Upole]. The trial court reported the relevant facts as follows:

> On June 2, 1999[,] [1] a jury awarded a verdict for Plaintiff Tamara S. Robinson and against Richard Orion Upole, Jr. The Plaintiff was awarded $3,100 Dollars for economic damages and $125,000 Dollars for non-economic damages even though Plaintiff had "limited tort" coverage. On June 11, 1999[,] Defendant Upole filed a Motion for Post Trial Relief requesting a direct entry of judgment in favor of the defendant by way of a judgment n.o.v. or a new trial, and in the alternative, a remittitur. Defendant asserts that Plaintiff had not suffered serious injury because Plaintiff testified

1. The record reflects that the jury actually reached its verdict on June 3, 1999. *See* N.T., 6/3/99, at 281.

that although she has some pain, there is nothing she can not do.

This case stems from a motor vehicle accident [that] occurred on June 13, 1994. The Defendant had stipulated to liability for the accident and the trial was limited to the issue of damages. . . .

Trial Court Opinion, 9/22/1999, at 1–2. Robinson introduced evidence that she suffers from chronic pain syndrome, fibromyalgia, and a sleep impairment resulting from the accident. *See* Deposition of Dr. Ronald E. Krauser, 3/2/1999, at 30. She presented expert testimony that the symptoms would likely be permanent. *See id.* at 40. Her physician imposed restrictions on Robinson's lifting and climbing activities, but could not document that he told Robinson of these restrictions. *See id.* at 34, 76–77. Robinson claims that because of her pain she has "severely reduced if not eliminated" physical recreational activities, has had to hire a housekeeper, and "no longer has a social life." Robinson's Brief, at 10.

¶ 2 The court granted Upole's motion for judgment n.o.v. because it found as a matter of law that Robinson did not produce sufficient evidence of a "serious injury" in order to recover non-economic damages under the limited tort election provision of the Motor Vehicle Financial Responsibility Law (MVFRL). *See* 75 Pa.C.S.A. § 1705. Robinson's timely appeal followed. Upole cross-appealed, claiming that the evidence was insufficient to support the verdict of $3,100 for economic damages.

■ ¶ 3 Our standard of review in this case is well settled. "We will reverse a trial court's grant or denial of a judgment notwithstanding the verdict only when we find an abuse of discretion or an error of law that controlled the outcome of the case." *Mitchell v. Moore*, 729 A.2d 1200, 1203 (Pa.Super.1999), *appeal denied* — Pa. ——, 751 A.2d 192, 2000 WL 122206 (2000). Further, "[t]he standard of review for an appellate court is the same as that for a trial court." *Ferry v. Fisher*, 709 A.2d 399, 402 (Pa.Super.1998).

"There are two bases upon which a judgment n.o.v. can be entered: one, the movant is entitled to judgment as a matter of law and/or two, the evidence is such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant. With the first, the court reviews the record and concludes that even with all factual inferences decided adverse to the movant the law nonetheless requires a verdict in his favor, whereas with the second the court reviews the evidentiary record and concludes that the evidence was such that a verdict for the movant was beyond peradventure."

*Rohm & Haas Co. v. Continental Cas. Co.*, 732 A.2d 1236, 1247 (Pa.Super.1999) *(quoting Moure v. Raeuchle*, 529 Pa. 394, 604 A.2d 1003, 1007 (1992)).

■ ¶ 4 In 1990, the legislature amended the MVFRL to allow insured motorists the opportunity of choosing a "limited tort" option in exchange for presumably lower insurance rates. Under this option, an insured that is injured by another driver "may seek recovery for all medical and other out-of-pocket expenses, but not for pain and suffering or other non-monetary damages unless the injuries suffered fall within the definition of 'serious injury' as set forth in the policy." 75 Pa.C.S.A. § 1705(a). In other words, "[u]nless the injury sustained is a serious injury, each person who is bound by the limited tort option shall be precluded from an action for any non-economic loss, except that [in circumstances inapplicable to the present matter]." *Id.* § 1705(d). The MVFRL defines "serious injury" as "[a] personal injury resulting in death, serious impairment of body function or permanent serious disfigurement." *Id.* § 1702. The crux of this case is whether Robinson proved she had suffered a "serious impairment of body function" and whether the court had the power to make the determination that, as a matter of law, she did not.

¶ 5 In *Washington v. Baxter*, 553 Pa. 434, 719 A.2d 733 (1998), our Supreme Court overruled our decision in *Dodson v. Elvey*, 445 Pa.Super. 479, 665 A.2d 1223 (1995) (en banc), *rev'd*, 554 Pa. 245, 720 A.2d 1050 (1998) (per curiam), and held that the question of whether a plaintiff suffered a "serious injury" is a question of fact for the jury. *See Washington*, 719 A.2d at 740. The Supreme Court

> concluded that the legislature's intent behind enactment of the limited tort option was to require that the threshold determination of whether a serious injury has been sustained not be made routinely by a trial court judge. Rather, it is to be decided by the jury unless reasonable minds could not differ on the question.

*Hames v. Philadelphia Housing Auth.*, 737 A.2d 825, 828 (Pa.Cmwlth.1999). Robinson's first argument is that by entering judgment n.o.v., the court "substitute[d] its view of the evidence for the verdict when the record provide[d] sufficient evidence supportive of the jury verdict." Robinson's brief, at 5. We agree and reinstate the jury's verdict.

¶ 6 The legislature did not define "serious impairment of body function" for juries to use in considering if a plaintiff who had chosen the "limited tort option" can recover non-economic damages. In *Washington*, however, the Court adopted the following definition as stated by the Michigan Supreme Court:

> "The 'serious impairment of body function' threshold contains two inquiries:
>
> a) What body function, if any, was impaired because of injuries sustained in a motor vehicle accident?
>
> b) Was the impairment of the body function serious? The focus of these inquiries is not on the injuries them-

selves, but on how the injuries affected a particular body function. Generally medical testimony will be needed to establish the existence, extent, and permanency of the impairment.... In determining whether the impairment was serious, several factors should be considered: the extent of the impairment, the length of time the impairment lasted, the treatment required to correct the impairment, and any other relevant factors. An impairment need not be permanent to be serious."

*Washington*, 719 A.2d at 740 (quoting *Di-Franco v. Pickard*, 427 Mich. 32, 398 N.W.2d 896, 901 (1986) (omission in original)).[2]

¶ 7 While the Court in *Washington* found that the trial court improperly made a threshold inquiry of whether the plaintiff's injuries were "serious," it upheld the trial court's granting of summary judgment to the defendant because "[e]ven when this evidence is taken in the light most favorable to Appellant as the nonmoving party, we find that reasonable minds could not differ on the conclusion that Appellant's injury was not serious." *Washington*, 719 A.2d at 741. In *Washington*, the evidence showed that the plaintiff missed a few days of work, he "might need to utilize orthotic heel lifts" in the future, the treatment for his injuries was not extensive, and, most importantly, "the injury seems to have had little or no impact on Appellant's performance of his job functions and engagement in personal activities." *See id.* at 741.

¶ 8 Since *Washington*, we have reversed grants of summary judgment in several cases because we determined that reasonable minds could differ as to whether Robinson suffered "serious injury."

---

2. The Michigan legislature has overruled *Di-Franco*, and now directs the trial court to make an initial determination whether there is a serious impairment of body function when there is no material dispute as to the nature and extent of the plaintiff's injuries.

*See* Mich. Comp Laws § 500.3135(2) (1999); *see also Paisley v. Waterford Roof Truss, Ltd.*, 968 F.Supp. 1189, 1195 n. 11 (E.D.Mich. 1997) (recognizing the abrogation of *DiFranco* ).

Upole attempts to distinguish these cases by noting that in these cases there was "objective evidence of far more serious injuries." Upole's Brief, at 32 (citing *Hellings v. Bowman*, 744 A.2d 274, 276 (Pa.Super.1999) (noting that plaintiff suffered "a herniated disk, degenerative disc disease and facet arthrosis"); *Kelly v. Ziolko*, 734 A.2d 893, 900 (Pa.Super.1999) (finding that the plaintiff suffered, among other things, a herniated disc that caused "pinching sensations in his legs."); *Furman v. Shapiro*, 721 A.2d 1125, 1127 (Pa.Super.1998) ("Appellant was diagnosed with several back conditions which included a bulging disc, a condition confirmed by an MRI test.")). In relying on the objective manifestations of the injuries, however, Upole ignores the Supreme Court's clear dictate in *Washington* that "[t]he focus of these inquiries is *not on the injuries themselves." Washington*, 719 A.2d at 740 (emphasis added). Rather, the inquiry must be the effect of the injury on a body function. *See id.* In *Washington*, for example, the Court conceded that "although some type of arthritis or coalition is affecting one of the joints in Appellant's right foot" there was no major impact on his life. *See id.* By contrast, in *Hellings*, the plaintiff's herniated disc caused him to suffer numbness in his knee, sharp pain in his hip, and spasms in his back. *See Hellings*, 744 A.2d 274, 276. The injuries prevented him from riding in his wife's car, engaging in various physical activities, and fully interacting with his children. *See id.* We found these averments were sufficient to allow jury to determine whether his injuries were "serious." *See id.* at 276. Similarly, in *Kelly*, the plaintiff's herniated disc caused back pain when he engaged in physical activity or sat for long periods of time, prevented him from running, and made playing with his child difficult. *See Kelly*, 734 A.2d at 899–900. In *Furman*, the plaintiff's bulg-

ing disc caused her to reduce her work schedule because she could not stay in one position for long periods, and prevented her from walking for more than one block at a time and bathing her daughter. *See Furman*, 721 A.2d at 1127.

¶ 9 The effects of Robinson's injuries on her body function are strikingly similar those incurred in the latter cases cited and inapposite to those in *Washington*. In all of those cases, as here, the plaintiff was able to resume working albeit with limitations. In the present matter, among other things, Robinson has alleged that she can no longer do many physical activities including housework and recreation without pain and cannot sleep. We conclude that reasonable minds could differ as to whether Robinson suffered a "serious injury" for purposes of the MVFRL, and we reverse the judgment for that reason.

¶ 10 In his cross-appeal, Upole claims that the weight of the evidence was insufficient to support the jury's verdict award of $3,100 in economic damages. "In considering the sufficiency of the evidence to sustain the verdict, we view the evidence in the light most favorable to the verdict winner, granting that party the benefit of all reasonable inferences, and determine only whether the evidence introduced at trial was sufficient to sustain the verdict." *Taylor v. Celotex Corp*, 393 Pa.Super. 566, 574 A.2d 1084, 1088 (1990). Upole claims that Robinson failed to document her lost time and wages from work to justify the jury's award. The parties stipulated that the amount of wage loss was $92.30 per day. *See* N.T., 6/3/1999, at 262.[3] Contrary to Upole's assertion, *Gordon v. Trovato*, 234 Pa.Super. 279, 338 A.2d 653 (1975) does not require a witness apart from the plaintiff to testify to the extent of lost wages; it merely provides that a witness must introduce some evidence other than conjecture to prove damages. *See id.* at 657.[4] Here, Robinson

---

**3.** The record does not contain this stipulation; it was, however, conveyed to the jury in the judge's charge. Because Upole did not object to this charge, any dispute he has with the

calculation of her wage loss per day is deemed waived. *See* 42 Pa.R.C.P. 227.1(b).

**4.** In *Gordon*, the plaintiff could not establish his hourly wage or the amount of days that he

testified that she missed fifty days from work because of the injury. It is within the province of the jury to judge the credibility of witnesses. *See Cree v. Horn*, 372 Pa.Super. 296, 539 A.2d 446, 449 (1988). Apparently, they believed her on this account.

¶ 11 Order reversed. We remand for reinstatement of the jury verdict dated June 3, 1999, recalculation of any delay damages due, and entry of judgment on the proper amount found due to Robinson. Jurisdiction relinquished.

worked. *See Gordon*, 338 A.2d at 655–56.