## Sekol v. Albrecht

C.P. of Lackawanna County, no. 99-CV-1434.

*James J. Conaboy,* for plaintiff.
*Thomas P. Comerford* and *Daniel E. Cummins,* for defendant.

NEALON, *J.,* March 23, 2001—Defendant, James P. Albrecht has filed a motion for summary judgment seeking to preclude plaintiff Kelly Sekol from recovering noneconomic damages as a "limited tort" elector who is unable to establish that she has suffered a "serious injury" under section 1705(d) of the Motor Vehicle Financial Responsibility Law. Since Sekol's own submissions do not create an inference from which reasonable minds could differ as to the absence of a serious impairment of a body function, there is no genuine issue of material fact for the jury to resolve and Albrecht's motion for summary judgment will therefore be granted.

## FACTUAL BACKGROUND

On May 22, 1997, Sekol was involved in an automobile accident as she was exiting a supermarket parking lot onto South Washington Avenue in Scranton and was struck by a vehicle that was being operated by Albrecht. At the time of the accident, plaintiff was insured by an automobile insurance policy in which she had selected limited tort coverage.[1] (See Kelly Sekol deposition

---

1. In her brief in opposition to the instant motion for summary judgment, Sekol originally argued that she should not be classified as a limited tort claimant under *Burton v. Sinnot,* 97 Lacka. Jur. 23 (1996),

dated 11/24/99, pp. 16-17.) As a limited tort claimant, Sekol may recover noneconomic damages only if she has suffered a "serious injury" as a result of the accident. Albrecht contends that based upon the records and information gathered during discovery, there is no genuine issue of fact that Sekol is incapable of proving the existence of a serious impairment of a body function which is attributable to the accident.

Immediately after the collision, Sekol was able to drive her vehicle from the accident site to her mother's residence before proceeding to the Community Medical Center emergency room for treatment. (*Id.,* pp. 53-54.) At the CMC, Sekol's care consisted largely of an obstetrical evaluation in light of the fact that she was five months pregnant at the time. (*Id.,* pp. 18-22.) Following her discharge from the emergency room, Sekol did not receive any further treatment until June 2, 1997, when she was examined by her family physician, Patrick D. Conaboy M.D. (See Dr. Conaboy report dated 11/9/98, p. 1.) In the interim, Sekol had been involved in an altercation with another woman on May 27, 1997, during which she was pushed against a building and bruised her back. (*Id.,* Sekol depo., pp. 22-25.)

Sekol maintains that she sustained injuries to her right neck and shoulder area and low back as a result of the

---

inasmuch as her insurer had neglected to provide her with a written cost comparison of the premium charges for full tort and limited tort coverages. However, in *Donnelly v. Bauer,* 553 Pa. 596, 720 A.2d 447 (1998), the Supreme Court of Pennsylvania held that an insurer's failure to notify an insured of the premium differential between limited and full tort options did not entitle the insured to full tort coverage. Hence, at the time of oral argument, Sekol withdrew her argument predicated upon the notice requirements of 75 Pa.C.S. §1705(a).

accident on May 22, 1997. (*Id.*, pp. 25-26.) According to Dr. Conaboy's report, his original diagnosis on June 2, 1997, "was severe low back and right shoulder strain" for which he prescribed physical therapy and Tylenol no. 3. At the time of her second examination on September 8, 1997, Sekol "demonstrated decreased lateral range of motion in the neck" but her "[n]eurologic exam was intact" and Dr. Conaboy "recommended that she continue conservative treatment at that time with physical therapy for one more month and that she be seen immediately following delivery [of her child]." (Dr. Conaboy report, pp. 1-2.) Sekol's child was subsequently born on October 10, 1997. (See Sekol depo., p. 21.)

She returned to Dr. Conaboy on November 6, 1997, and except for the presence of "spasm in the right trapezius muscle and pain with compression of the C-spine," her physical examination "was stable" and "demonstrated good grip strength bilaterally." An MRI scan was performed on November 8, 1997, which "was essentially within normal limits except for a subtle herniation at C4-C5" with "no encroachment of the canal and no true herniation."[2] Consequently, Dr. Conaboy concluded that the MRI finding "was most probably of

---

2. The defense medical expert, Peter A. Feinstein M.D., stated in his report to defense counsel that the MRI was "read as some disc bulging at the C4-5 level but no evidence of nerve compression or herniated disc." (See defendant's summary judgment motion, exhibit B, p. 1.) The radiology report interpreting the MRI scan dated November 12, 1997, has not been submitted for our review or consideration. Parenthetically, it should be noted that Dr. Feinstein also opined that Sekol's injuries consisted of "a myofascial or bruise or contusion to the cervical spine and right shoulder region" which had completely resolved as of the date of his defense examination on July 7, 2000. (*Id.*, p. 5.)

minimal clinical significance." (See Dr. Conaboy report, p. 2.)

Sekol "did not return for follow-up on the injury until quite some time later" in July 1998 at which time she also reported that she had suffered "a fall injuring her coccygeal area" in July 1997. Although Sekol first complained of having "developed severe headaches and then aches/pains throughout a great deal of her body" at the time of her July 1998 visit, Dr. Conaboy has opined that "[i]t is difficult to say what part of this pain is a result of the MVA [motor vehicle accident]." Moreover, while Dr. Conaboy has indicated that "[i]t is certainly reasonable to say" that Sekol's pain in 1997 was attributable to the accident, he has further concluded that as of November 9, 1998, "she [was] recovering quite well and no longer require[d] any physical therapy" or treatment other than the occasional use of nonsteroidal medication. (*Id.*, p. 2.) Additionally, Sekol has never been referred to any type of a medical specialist for a consultation or evaluation. (See Sekol depo., p. 34.)

Albrecht submits that even if Sekol's deposition testimony and Dr. Conaboy's medical opinions are accepted as true, they are insufficient to satisfy the "serious injury" threshold. In response, Sekol posits that the "[m]edical evidence provided by [her] supports her ongoing problems and certainly substantiates a serious impairment of her bodily function." (See plaintiff's brief, p. 8.) The parties have files their respective memoranda of law, and following the completion of oral argument on March 12, 2001, this matter became ripe for disposition.

## II. DISCUSSION

### (A) *Standard of Review*

In 1990, the Pennsylvania legislature amended the MVFRL to enable a named insured to purchase full tort or limited tort coverage for a private passenger motor vehicle insurance policy. See 75 Pa.C.S. §1705(a). If the consumer affirmatively elects limited tort coverage she is barred from recovering damages for noneconomic harm unless she sustains a "serious injury," see *Hobbs v. Ryce,* 769 A.2d 469, 472 (Pa. Super. 2001), or is deemed to be a full tort plaintiff by virtue of one of the statutory exceptions to limited tort coverage in 75 Pa. C.S. §1705(d). See *Cordaro v. Hedderick,* 45 D.&C.4th 353, 358-59 n.3 (Lacka. Cty. 2000); *Rivera v. Barone,* 99 Lacka. Jur. 130, 133 n.2 (1998). The MVFRL defines a serious injury as "[a] personal injury resulting in death, serious impairment of body function or permanent serious disfigurement." 75 Pa.C.S. §1702.

In *Washington v. Baxter,* 553 Pa. 434, 719 A.2d 733 (1998), the Supreme Court of Pennsylvania adopted the Michigan approach for serious injury inquiries and held "that the traditional summary judgment standard was to be followed and that the threshold determination was not to be made routinely by a trial court judge. . . ." *Id.* at 446, 719 A.2d at 740. The *Washington* court specifically directed that "serious injury" determinations were "to be left to a jury unless reasonable minds could not differ on the issue of whether a serious injury had been sustained." *Id.* at 446-47, 719 A.2d at 740 (footnote omitted); *Furman v. Shapiro,* 721 A.2d 1125, 1126 (Pa. Super. 1998). As one jurist has aptly observed, "the as-

sessment of seriousness requires an inherently subjective analysis and while the legislature intended that one who selects the limited tort option should recover for noneconomic damages in only narrow circumstances, it is a matter that should routinely be left to the jury." *Coughlin v. Miljack Inc.,* 45 D.&C.4th 504, 512 (Erie Cty. 2000). To withstand a motion for summary judgment, a non-moving party must adduce sufficient evidence on an issue essential to which she bears the burdens of proof such that a jury could return a verdict in favor of that party. *Washington, supra* at 441, 719 A.2d at 737. When considering a "serious injury" challenge in the context of a summary judgment motion, the record must be viewed in a light most favorable to the non-movant with all doubts as to the existence of a genuine issue of material fact being resolved against the moving party. *Hames ex rel. Hames v. Philadelphia Housing Authority (Hames II),* 737 A.2d 825, 828 n.4 (Pa. Commw. 1999); *Furman, supra.* Furthermore, even if the parties agree on the nature and extent of the injuries and there is no genuine dispute regarding the salient facts, summary judgment should not be granted if those facts support conflicting inferences. *Washington, supra* at 447 n.10, 719 A.2d at 740 n.10; *Sanderson-Cruz v. USA,* 88 F. Supp.2d 388, 394 (E.D. Pa. 2000); *Rivera,* 99 Lacka. Jur. at 136. Simply stated, "[t]he question to be answered is not whether [a claimant] has adduced sufficient evidence to show that [the claimant] suffered *any* injury; rather, the question is whether [the claimant] has shown that he has suffered a *serious* injury such that a body function has been seriously impaired." *Washington, supra* at 449, 719 A.2d at 741

(emphasis in original); *McGee v. Muldowney,* 750 A.2d 912, 914 (Pa. Super. 2000).

### (B) *"Serious Injury" Criteria*

Neither the MVFRL nor the relevant legislative history offer any guidance regarding the parameters of a "serious impairment of a body function." See *Robinson v. Uphole,* 750 A.2d 339, 342 (Pa. Super. 2000); *Hellings v. Bowman,* 744 A.2d 274, 276 (Pa. Super. 1999). In *Washington,* the Supreme Court filled that definitional void expressly adopting the following standard from *DiFranco v. Pickard,* 427 Mich. 32, 398 N.W.2d 896 (1986):

"The 'serious impairment of body function' threshold contains two inquiries:

"(a) What body function, if any, was impaired because of injury sustained in a motor vehicle accident?

"(b) Was the impairment of the body function serious? The focus of these inquiries is not on the injuries themselves, but on how the injuries affected a particular body function. Generally, medical testimony will be needed to establish the existence, extent and permanency of the impairment . . . . In determining whether the impairment was serious, several factors should be considered: the extent of the impairment, the length of time the impairment lasted, the treatment required to correct the impairment, and any other relevant factors. An impairment need not be permanent to be serious." *Washington, supra* at 447-48, 719 A.2d at 740; *Hellings, supra.*

When conducting a "serious injury" analysis, the focal point it is not the injury itself, but rather the nature

and extent of the impairment resulting from the injury. *Robinson,* 750 A.2d at 343; *Hames II,* 737 A.2d at 828. As a consequence, a soft tissue injury may constitute a "serious impairment of a body function" if it has sufficiently interfered with a body function. *Chanthavong v. Tran,* 452 Pa. Super. 378, 392, 682 A.2d 334, 341 (1996); *Murray v. McCann,* 442 Pa. Super. 30, 38, 658 A.2d 404, 408 (1995); *Krukovitz v. Cole,* 97 Lacka. Jur. 18, 21 (1996). In addition, a plaintiff who is already suffering from an ailment or disability at the time of an accident may nevertheless sustain a serious injury under 75 Pa. C.S. §1705. See *Sanderson-Cruz,* 88 F. Supp.2d at 394 ("there is a genuine issue of material facts as to whether the accident caused Sanderson–Cruz to re-injure or cause her lower back condition to be aggravated or whether the accident did not in fact cause her any injury"); *Cordaro,* 45 D.&C.4th at 362-64 (a claimant who is vocationally disabled at the time of an accident due to impairment involving one part of the anatomy may suffer a "serious impairment of body function" by sustaining a distinct injury to another part of his body). Conversely, a plaintiff may suffer an objectively identifiable injury such as a broken bone or herniated disc, but not sustain a "serious injury" if it does not adequately impair a bodily function. See *e.g., Sprankle v. Brown,* 44 D.&C.4th 314 (Indiana Cty. 1999) (fractured ribs did not constitute serious injuries since the plaintiff was able to perform her usual daily activities without complication); *Stefanou v. Pearce,* 41 D.&C.4th 505 (Lehigh Cty. 1999) (plaintiff did not sustain a serious injury where her herniated disc was corrected by surgery and her ongoing symptoms

were the result of a pre-existing degenerative disc disease).

In *Washington,* the Supreme Court declined to adopt the suggestion in *Dodson v. Elvey,* 445 Pa. Super. 479, 665 A.2d 1223 (1995), *rev'd and remanded,* 554 Pa. 245, 720 A.2d 1050 (1998), that a plaintiff cannot establish a serious injury in the absence of objective proof of impairment. See *Hames II,* 737 A.2d at 829 (remarking that the *Washington* court "did not adopt the language from *Dodson* that objective medical evidence is required to cross the serious injury threshold"); *Murray,* 442 Pa. Super. at 37, 658 A.2d at 407 (concluding that the trial court erred by charging "that serious bodily injury impairment could not be found in the absence of an injury that was objectively manifested" since the *DiFranco* standard does not "limit recovery of noneconomic damages to a plaintiff whose injuries can be seen or felt by a clinical test"). Last April, a three-judge panel of the Superior Court rejected a defendant's contention that a serious injury cannot be proven unless the plaintiff introduces objective evidence of injury. See *Robinson,* 750 A.2d at 343 ("[i]n relying on the objective manifestations of the inquiries, however, [defendant] ignores the Supreme Court's clear dictate in *Washington* that 'the focus of these injuries is *not on the injuries themselves*' . . . [but] [r]ather, the inquiry must be the effect of the injury on a body function"). (citation omitted) (emphasis in original) Not withstanding that fact, approximately two weeks later, the same panel of the Superior Court affirmed the entry of summary judgment against a limited tort plaintiff and reasoned:

"In summary, [plaintiff] has *failed to present objective medical evidence* as to the degree of any impairment and extent of any pain suffered during the five years preceding [his] answers to the motion for summary judgment. The subjective allegations presented by [plaintiff], *in the absence of objective medical evidence,* do not permit a finding that [plaintiff] suffered the requisite serious injury." *McGee,* 750 A.2d at 915. (emphasis added)

Thus, there appears to be a minority school of appellate judicial thought that a limited tort claimant cannot survive a "serious injury" challenge without the benefit of objective proof of injury.

It is clear, however, that while the length of time that an impairment has lasted is relevant to a serious injury determination, an impairment need not be permanent in order to qualify as serious. *Leonelli v. McMullen,* 700 A.2d 525, 527-28 (Pa. Super. 1997); *Murray,* 442 Pa. Super. at 39 n.3, 658, A.2d at 408 n.3. Similarly, the fact that a plaintiff has returned to gainful employment will not necessarily foreclose the existence of a serious injury. *Robinson,* 750 A.2d at 343 (plaintiff was able to resume working albeit with limitations, but could no longer perform certain recreational activities); *Kelly v. Ziolko,* 734 A.2d 893, 900 (Pa. Super. 1999); *Furman,* 721 A.2d at 1127. Even a plaintiff's discontinuance of medical treatment will not perforce negate the establishment of a serious injury in every case. See *Kelly, supra* (case remanded for jury trial even though plaintiff no longer received "treatment or prescription medication for his pain"); *Furman, supra* (serious injury issue must be decided by a jury even though plaintiff

had terminated her treatment within one year of the accident); *Leonelli,* 700 A.2d at 529 (failure of plaintiff to seek medical treatment due to limited financial resources does not establish that his injuries were not serious).

In examining the extent and duration of Sekol's alleged impairment, the reproduced record in this case reflects that at the time of the accident, she was employed as a full-time phlebotomist and only missed a few days of work as a result of her injuries. (*Id.,* pp. 7-15.) Compare *Baldwin v. Brown,* 42 D.&C.4th 90 (Bradford Cty. 1999) (jury should decide serious injury issue since plaintiff's chronic back pain forced her to leave her pre-injury job as a result of lifting restrictions imposed by her physician) and *Atkinson v. Snyder,* 41 D.&C.4th 1 (Bucks Cty. 1999) (plaintiff did not sustain a serious injury where he missed four weeks of work and only experienced subjective symptoms on a chronic basis). Since 1999, she has been employed full time as a nursing assistant where her job responsibilities include bathing, clothing and caring for elderly patients. Despite the fact that her employment as a nursing assistant involves considerable lifting, bending and squatting, Sekol has not missed any time from work because of her injuries. (*Id.,* pp. 5-6, 32.) In terms of her subjective limitations, her only chronic complaints are that she cannot "go out and play ball" with her children as frequently as she did before the accident and that her headaches partially affect her ability to clean her home and care for her children. (*Id.,* pp. 29-31.) See *Tahos v. Marte,* 42 D.&C.4th 76 (Lehigh Cty. 1999) (plaintiff's arm and shoulder injuries did not constitute a serious

impairment since they did not prevent him from work-
ing and only caused temporary disruption of his leisure
activities). As to her medical treatment, Sekol was ex-
amined by her family physician on three occasions within
six months of the accident, and other than a single addi-
tional visit with that physician in July 1998, she has not
received any further medical treatment for her accident-
related injuries.[3]

The Pennsylvania appellate courts have affirmed the
entry of summary judgment in cases in which the plain-
tiffs have experienced more significant impairments
than those being claimed by Sekol. For example, in
*Washington,* the plaintiff was unable to work at his first
job for four or five days and did not return to his second
job for almost two months. *Washington, supra* at 437-
38, 448, 719 A.2d at 735, 741. In *McGee,* the claimant
was referred to orthopedic specialists who treated him
on six occasions during a 15-month period and pre-
scribed several months of physical therapy. *McGee,* 750
A.2d at 914-15. Although the vocational disability and
medical treatment in *Washington* and *McGee* were
more extensive than that at issue in the case sub judice,
in both cases the courts concluded as a matter of law
that the plaintiffs' impairments were insufficient to sat-
isfy the "serious injury" threshold. Accord *Coughlin,*
45 D.&C.4th at 516-17 (summary judgment granted

---

3. Sekol has attached to her brief a copy of a phone message that her
new family physician, Dr. Michael Rogan, reportedly received from
Sekol in February 1999 requesting a prescription. The phone message
script does not indicate or document that the medication was pre-
scribed for a condition that is attributable to the accident. Thus, it is
not competent evidence of ongoing medical treatment for her injuries
in question. See *Stefanou, supra.*

where plaintiff regained full employment within three months and her treatment was limited to osteopathic and chiropractic manipulations, physical therapy and pain medication).

Even if the record is viewed in a light most favorable to Sekol, it is devoid of any competent evidence of a serious impairment of a body function. Sekol's own deposition testimony and the opinions proffered by her treating physician do not establish a triable issue of fact with respect to a serious impairment. Accordingly, Albrecht's motion for summary judgment will be granted and Sekol will be preluded from seeking the recovery of noneconomic damages in this matter.

And now, March 23, 2001, upon consideration of the partial "motion of defendant, James P. Albrecht, for summary judgment," the memoranda of law submitted by the parties and the oral argument of counsel on March 12, 2001, and based upon the reasoning set forth in the foregoing memorandum, it is hereby ordered and decreed that:

(1) The motion of defendant James P. Albrecht for partial summary judgment is granted; and

(2) Plaintiff Kelly Sekol is precluded from recovering damages for noneconomic loss in this case.