J-A05042-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| MELANY RAMOS, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| MICHAEL AND DONNA JONES, | |
| Appellees | No. 2124 EDA 2014 |

Appeal from the Order Entered June 18, 2014
In the Court of Common Pleas of Northampton County
Civil Division at No(s): C-0048-CV-2012-2141

BEFORE:  GANTMAN, P.J., SHOGAN, and ALLEN, JJ.

MEMORANDUM BY SHOGAN, J.:                           **FILED APRIL 10, 2015**

Appellant, Melany Ramos, appeals from the June 18, 2014 order that granted partial summary judgment in favor of Michael Jones and Donna Jones (collectively "Appellees"), which was made final and appealable by an order entered on July 11, 2014.  We affirm.

The trial court set forth the relevant facts and procedural background of this case as follows:

> On March 2, 2012, [Appellant] filed a Praecipe for Writ of Summons.  On March 27, 2012, [Appellees] filed a Praecipe for Rule to File Complaint.

> On April 9, 2012, [Appellant] filed her Complaint, in which she avers that on March 21, 2010, a motor vehicle accident occurred between [Appellee] Michael Jones and [Appellant] at the intersection of Union Boulevard and Airport Road. [Appellee] Michael Jones was allegedly negligently driving a vehicle with the permission of [Appellee] [Donna] Jones. [Appellant] avers in her Complaint that she suffered "severe, serious and disabling" injuries, directly and proximately caused by the [Appellees']

negligence. Specifically, she complains of sprains and strains of her neck and back, as well as injuries to her discs, shoulders, head and right knee. She also asserts that she suffers mental damages that were directly and proximately caused by this motor vehicle accident: PTSD, depression, fear, anxiety, and/or other mental and psychic injuries. [Appellant] also complains of economic injuries, including lost wages, the incurrence of large bills due to treatment, and out-of-pocket expenses. Finally, [Appellant] complains that, as a result of the accident, she is unable to pursue her usual occupation.

On April 25, 2012, [Appellees] filed an Answer and New Matter. In their Answer, [Appellees] aver that [Appellee] Michael Jones had [Appellee] Donna Jones's permission to use the vehicle, but he did not use the vehicle to run an errand for her or under her direction. In their New Matter, [Appellees] chiefly contend that [Appellant's] claim for any non-economic losses is barred pursuant to the Motor Vehicle Financial Responsibility Act (the "MVRL"), 75 Pa.C.S.A. § 1701, *et seq.*, because [Appellant] selected the limited tort option when applying for the insurance policy in effect at the time of the accident. See Answer with New Matter at ¶¶ 25-27. Additionally, [Appellees] contest causation. Id. at ¶28. Other affirmative and equitable defenses are also raised in the New Matter.

On May 9, 2012, [Appellant] filed her Response, asserting that the averments in [Appellees'] New Matter amounted to conclusions of law. Id. at ¶¶ 29-33. The parties engaged in discovery, which included obtaining medical records and conducting depositions.

[Appellees] filed a Motion for Partial Summary Judgment on February 21, 2014, arguing that they are entitled to judgment as a matter of law because [Appellant] selected the limited tort option in her insurance policy and did not sustain an injury which constitutes a serious impairment of a body function. As such, they argue, she is not entitled to damages for non-economic damages. [Appellees] filed a Memorandum of Law supporting their Motion on the same date.

On March 24, 2014, [Appellant] filed an Answer and Brief in Opposition, in which she argued that this determination is one for the jury because reasonable minds could differ. On April 29, 2014, [Appellees] filed a Reply to [Appellant's] Brief in Opposition to Motion for Partial Summary Judgment. On May 1,

> 2014, [Appellant] filed [a] Reply to [Appellees'] Submission at Oral Argument.
>
> This matter was placed on the April 25, 2014, Argument List and argument was heard.

Order and Statement of Reasons, 6/18/14, at 1-3.

The trial court concluded that Appellant's injuries were *de minimus*, and it granted Appellees' motion for partial summary judgment. Order and Statement of Reasons, 6/18/14, at 1. The June 18, 2014 order precluded Appellant from seeking or recovering non-economic damages due to her selection of the limited tort option. **Id**. The order dismissed all claims for non-economic damages with prejudice. **Id**.

Ordinarily, an order granting partial summary judgment is interlocutory. However, on July 3, 2014, Appellant filed a motion to make the June 18, 2014 order final and appealable pursuant to Pa.R.A.P. 341(c). In an order filed on July 11, 2014, the trial court granted Appellant's motion. Accordingly, the July 11, 2014 order, which granted partial summary judgment, made the June 18, 2014 order final and appealable. This timely appeal followed.

On appeal, Appellant raises one issue for this Court's consideration:

1. Did the trial court usurp the jury's function and commit an error of law / abuse of discretion in granting partial summary judgment and dismissing [Appellant's] claim for noneconomic damages, given the existence of genuine issues of material fact as to whether [Appellant] suffered a "serious injury" or serious impairment of some bodily function, especially considering that [Appellant] submitted expert and lay testimony that [Appellant's] ongoing injuries permanently disabled her from performing her pre-injury job as a CNA?

- 3 -

Appellant's Brief at 3.

The standard of review we apply is as follows:

> Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion. Summary judgment is appropriate only when the record clearly shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. The reviewing court must view the record in the light most favorable to the nonmoving party and resolve all doubts as to the existence of a genuine issue of material fact against the moving party. Only when the facts are so clear that reasonable minds could not differ can a trial court properly enter summary judgment.

*Hovis v. Sunoco, Inc.*, 64 A.3d 1078, 1081 (Pa. Super. 2013).

In Pennsylvania, when selecting automobile insurance, drivers have the option of choosing limited-tort coverage or full-tort coverage. 75 Pa.C.S. § 1705. An individual who has purchased full-tort coverage and who is injured by a negligent driver can recover all medical and out-of-pocket expenses, as well as financial compensation for pain and suffering and other noneconomic damages. *Varner-Mort v. Kapfhammer*, ___ A.3d ___, ___, 2015 PA Super 14, at *4, 2015 WL 252444 (Pa. Super. 2015) (filed January 21, 2015) (citing 75 Pa.C.S. § 1705(a)(1)(B)). "A limited-tort plaintiff also can recover all medical and out-of-pocket expenses; however, such a plaintiff cannot recover for pain and suffering or other noneconomic damages unless the plaintiff's injuries fall within the definition of 'serious injury.'" *Id*. (citing 75 Pa.C.S. § 1705(a)(1)(A)). The term "serious injury"

- 4 -

is defined as follows: "A personal injury resulting in death, serious impairment of body function or permanent serious disfigurement." 75 Pa.C.S. § 1702.

> Our Supreme Court has held that in determining whether a motorist has suffered a serious injury, "the threshold determination was not to be made routinely by a trial court judge ... but rather was to be left to a jury unless reasonable minds could not differ on the issue of whether a serious injury had been sustained." **Washington v. Baxter**, 553 Pa. 434, 719 A.2d 733, 740 (1998). In conducting this inquiry, "several factors must be considered to determine if the claimed injury is 'serious': '[**1.**] the extent of the impairment, [**2.**] the length of time the impairment lasted, [**3.**] the treatment required to correct the impairment, and [**4.**] any other relevant factors.'" **Graham v. Campo**, 990 A.2d 9, 16 (Pa. Super. 2010), *appeal denied*, 609 Pa. 703, 16 A.3d 504 (2011). Our Supreme Court has cautioned that "the focus of these inquiries is not on the injuries themselves, but on how the injuries affected a particular body function." **Washington, supra**. We remain cognizant of the principle that "[a]n impairment need not be permanent to be serious" under section 1705(d). **Robinson v. Upole**, 750 A.2d 339, 342 (Pa. Super. 2000) (citation omitted).

**Cadena v. Latch**, 78 A.3d 636, 640 (Pa. Super. 2013) (emphasis added).

Following our review of the certified record, the parties' briefs, and relevant legal authority, we conclude that the Order and Statement of Reasons, which is incorporated by reference in the trial court's August 21, 2014 Pa.R.A.P. 1925(a) statement, comprehensively and correctly disposes of Appellant's claim of error. **See** Order and Statement of Reasons, 6/18/14, at 5-13 (reciting the facts of record, applying the four factors noted above, and concluding that reasonable minds could not differ on the conclusion that Appellant did not suffer a serious injury). Appellant elected

- 5 -

limited-tort coverage, and we agree with the trial court's conclusion that Appellant failed to establish that she suffered a "serious injury" as that term is defined. We discern no error or abuse of discretion in the trial court's conclusion.

Accordingly, we affirm the trial court order granting Appellees' motion for partial summary judgment, and we do so on the basis of the trial court's Order and Statement of Reasons dated June 18, 2014. The parties are directed to attach a copy of the trial court's June 18, 2014 Order and Statement of Reasons to this memorandum in the event of further proceedings.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/10/2015

IN THE COURT OF COMMON PLEAS OF NORTHAMPTON COUNTY, PENNSYLVANIA
CIVIL DIVISION

MELANIE RAMOS,                          )          NO: C-48-CV-2012-2141
                                        )
            Plaintiff,                  )
                                        )
      v.                                )
                                        )
MICHAEL JONES, DONNA JONES,             )
                                        )
            Defendants.                 )

FILED
2014 JUN 18 AM 11:06
COURT OF COMMON PLEAS
CIVIL DIVISION
NORTHAMPTON COUNTY, PA

### ORDER OF COURT

AND NOW, this 1 ᵗʰ day of June, 2014, upon consideration of the Defendants, Michael

Jones and Barbara Jones's, Motion for Partial Summary Judgment, and the Plaintiff, Melanie

Ramos's, response thereto, it is hereby **ORDERED** that said Motion is **GRANTED**, and the

Plaintiff is precluded from asserting and recovering any and all non-economic damages due to

her selection of the Limited Tort Option.

It is further **ORDERED** that any and all claims for non-economic damages are

**DISMISSED** with prejudice.

### STATEMENT OF REASONS

#### Facts and Procedural History

On March 2, 2012, the Plaintiff, Melanie Ramos, filed a Praecipe for Writ of Summons.

On March 27, 2012, the Defendants, Michael Jones and Barbara Jones, filed a Praecipe for Rule

to File Complaint.

On April 9, 2012, the Plaintiff filed her Complaint, in which she avers that on March 21,

2010, a motor vehicle accident occurred between Defendant Michael Jones and the Plaintiff at

the intersection of Union Boulevard and Airport Road. Defendant Michael Jones was allegedly

negligently driving a vehicle with the permission of Defendant Barbara Jones. The Plaintiff

avers in her Complaint that she suffered "severe, serious and disabling" injuries, directly and proximately caused by the Defendants' negligence. Specifically, she complains of sprains and strains of her neck and back, as well as injuries to her discs, shoulders, head and right knee. She also asserts that she suffers mental damages that were directly and proximately caused by this motor vehicle accident: PTSD, depression, fear, anxiety, and/or other mental and psychic injuries. The Plaintiff also complains of economic injuries, including lost wages, the incurrence of large bills due to treatment, and out-of-pocket expenses. Finally, the Plaintiff complains that, as a result of the accident, she is unable to pursue her usual occupation.

On April 25, 2012, the Defendants filed an Answer and New Matter. In their Answer, the Defendants aver that Defendant Michael Jones had Defendant Donna Jones's permission to use the vehicle, but he did not use the vehicle to run an errand for her or under her direction. In their New Matter, the Defendants chiefly contend that the Plaintiff's claim for any non-economic losses is barred pursuant to the Motor Vehicle Financial Responsibility Act (the "MVRL"), 75 Pa.C.S.A. § 1701, *et seq.*, because the Plaintiff selected the limited tort option when applying for the insurance policy in effect at the time of the accident. See Answer with New Matter at ¶¶ 25-27. Additionally, the Defendants contest causation. Id. at ¶ 28. Other affirmative and equitable defenses are also raised in the New Matter.

On May 9, 2012, the Plaintiff filed her Response, asserting that the averments in the Defendants' New Matter amounted to conclusions of law. Id. at ¶¶ 29-33. The parties engaged in discovery, which included obtaining medical records and conducting depositions.

The Defendants filed a Motion for Partial Summary Judgment on February 21, 2014, arguing that they are entitled to judgment as a matter of law because the Plaintiff selected the limited tort option in her insurance policy and did not sustain an injury which constitutes a

2

serious impairment of a body function. As such, they argue, she is not entitled to damages for non-economic damages. The Defendants filed a Memorandum of Law supporting their Motion on the same date.

On March 24, 2014, the Plaintiff filed an Answer and Brief in Opposition, in which she argued that this determination is one for the jury because reasonable minds could differ. On April 29, 2014, the Defendants filed a Reply to Plaintiff's Brief in Opposition to Motion for Partial Summary Judgment. On May 1, 2014, the Plaintiff filed Reply to Defendants' Submission at Oral Argument.

This matter was placed on the April 25, 2014, Argument List and argument was heard.

### Legal Standard

Pennsylvania Rule of Civil Procedure 1035.2 states:

> After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law
>
> (1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or
>
> (2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to the jury.

Pa.R.C.P. 1035.2.

Further, under Pa.R.C.P. 1035.3(a), the nonmoving party may not rest upon mere allegations or denials of the pleadings but must file a response within thirty (30) days after service of the motion. In other words, the nonmoving party has a clear and affirmative duty to

3

respond to a motion for summary judgment. Harber Phila. Ctr. City Office Ltd. v. LPCI Ltd. P'ship, 764 A.2d 1100, 1104 (Pa. Super. 2000). Also, Pa.R.C.P. 1035.3(d) specifically provides that "[s]ummary judgment may be entered against a party who does not respond." Id.

Summary judgment may be granted only in the clearest of cases where the record shows that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. P.J.S. v. Pa. State Ethics Comm'n, 723 A.2d 174, 176 (Pa. 1999) (citing Marks v. Tasman, 589 A.2d 205 (Pa. 1991)). Summary judgment is only appropriate in the clearest of cases, because an order favorable to the moving party will prematurely end an action. Scopel v. Donegal Mut. Ins. Co., 698 A.2d 602, 605 (Pa. Super. 1997) (citations omitted). The moving party has the burden of proving the non-existence of any genuine issue of material fact. O'Rourke v. Pa. Dep't of Corr., 730 A.2d 1039, 1041 (Pa. Commw. Ct. 1999) (citing Kee v. Turnpike Comm'n, 722 A.2d 1123 (Pa. Commw. Ct. 1998)). "Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which it bears the burden of proof . . . establishes the entitlement of the moving party to judgment as a matter of law." Murphy v. Duquesne Univ. of the Holy Ghost, 777 A.2d 418, 429 (Pa. 2001) (quoting Young v. PennDOT, 744 A.2d 1276, 1277 (Pa. 2000)) (omission in original) (internal quotation marks omitted). The record must be viewed in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Ertel v. Patriot-News Co., 674 A.2d 1038, 1041 (Pa. 1996) (citation omitted).

Under the Nanty-Glo Rule, summary judgment may not be granted where the moving party relies exclusively on oral testimony, either through testimonial affidavits or deposition testimony to establish the absence of a genuine issue of material fact. Nanty-Glo Borough v. American Surety Co., 163 A. 523, 524 (Pa. 1932); see also Penn Center House, Inc. v. Hoffman,

4

553 A.2d 900, 903 (Pa. 1989); White v. Owens Corning Fiberglas. Corp., 668 A.2d 136, 142 (Pa.

Super. 1995); Garcia v. Savage, 586 A.2d 1375, 1377-78 (Pa. Super. 1991); O'Rourke, 730 A.2d

at 1041 (citing Kaplan v. Se. Pa. Transp. Auth., 688 A.2d 736 (Pa. Commw. Ct. 1997)).

## Discussion

Under Section 1705 of the Motor Vehicle Financial Responsibility Law ("MVFRL"), an

insured motorist may elect a "limited tort" option in exchange for lower insurance rates. 75

Pa.C.S.A. § 1705; see also Washington v. Baxter, 719 A.2d 733, 737-38 (Pa. 1998). Under this

limited tort option, an insured driver who is injured by another driver may "seek recovery for all

medical and other out-of-pocket expenses, but not for pain and suffering or for other non-

monetary damages unless the injuries suffered fall within the definition of 'serious injury' as set

forth in the policy." 75 Pa.C.S.A. § 1705(a). While the insured who elects the limited tort

alternative remains eligible to pursue a cause of action for economic loss, "[u]nless the injury

sustained is a serious injury, each person who is bound by the limited tort option shall be

precluded from an action for any non-economic loss . . . ." 75 Pa.C.S.A. § 1705(d). Further, the

MVFRL defines "serious injury" as "[a] personal injury resulting in death, serious impairment of

a body function or permanent serious disfigurement." 75 Pa.C.S.A. § 1702.

Initially, we note that in Washington v. Baxter, supra, our Supreme Court established the

standard by which trial courts are to determine whether a plaintiff has suffered a "serious injury"

by which the plaintiff is permitted to recover non-economic damages despite her selection of the

"limited tort option" under the MVFRL. Our Supreme Court determined, after a review of case

law and the legislative history of the MVFRL, that: "the traditional summary judgment standard

[is] to be followed and . . . the threshold determination [is] not to be made routinely by a trial

court judge in [these] matters . . . but rather [is] to be left to a jury unless reasonable minds could

5

not differ on the issue of whether a serious injury has been sustained." Washington, 719 A.2d at 740. Moreover, all inferences must be resolved in favor of the non-moving party. Id. Thus, "the ultimate determination should be made by the jury in all but the clearest of cases." McGee v. Muldowney, 750 A.2d 912, 914 (Pa Super. 2000).

The Washington Court adopted the following definition of "serious impairment of a bodily function" as stated by the Michigan Supreme Court:

The 'serious impairment of a bodily function' threshold contains two inquiries:

a) What body function, if any, was impaired because of injuries sustained in a motor vehicle accident?

b) Was the impairment of the body function serious? The focus of these inquiries is not on the injuries themselves, but on how the injuries affected a particular body function. Generally medical testimony will be needed to establish the existence, extent, and permanency of the impairment . . . . In determining whether the impairment was serious, several factors should be considered: the extent of the impairment, the length of time the impairment lasted, the treatment required to correct the impairment, and any other relevant factors. An impairment need not be permanent to be serious.

Washington, 719 A.2d at 740 (quoting DiFranco v. Pickard, 398 N.W.2d 896, 901 (Mich. 1986)) (omission in original). Further, our Supreme Court emphasized that "[t]he question to be answered is not whether appellant has adduced sufficient evidence to show that appellant suffered any injury; rather, the question is whether appellant has shown that he suffered a serious injury such that a body function has been seriously impaired." Id. at 741 (emphasis in original); see also McGee, 750 A.2d at 914.

We look to first at what body function, if any, was injured as a result of the motor vehicle accident of March 21, 2010. Here, the Plaintiff complains of neck and shoulder pain, which she contends resulted solely from the motor vehicle accident. See Complaint ¶ 10.

6

Second, we consider whether the impairment of the body function is serious. The record reveals the following with regard to the impairment:

(1) The Plaintiff was examined in the emergency room of Sacred Heart Hospital following the motor vehicle accident of March 21, 2010, and discharged with soft tissue injuries and painful tenderness in the right knee. No abnormalities or tenderness in the back or neck was noted. With regard to the severity of the symptoms, the physician documentation states: "[a]t their worst the symptoms were mild, in the emergency department the symptoms are unchanged."

(2) The Plaintiff was examined at Airport Road EmergiCenter on March 30, 2010, nine days later, and was diagnosed with right knee pain and a musculoskeletal strain. An x-ray of her cervical spine was performed and the cervical spine was found to be within the normal limits. A CT scan of the brain revealed no abnormalities.

(3) On April 13, 2010, and May 4, 2010, the Plaintiff was seen by Dr. Joseph Grassi, M.D., of Orthopedic Associates of the Greater Lehigh Valley, P.A. His clinical impressions included ongoing cervicalgia (neck pain) whiplash-type syndrome in the upper back and neck, right knee contusion, and myofasciitis (inflammation of a muscle and its fascia), lower back sprain/strain.

(4) On June 29, 2010, the Plaintiff was seen by Dr. Grassi for a follow-up appointment, three months after the accident. Dr. Grassi noted some continuing upper, mid and lower back pain, but found no radiation of symptoms. Further, he found: "Regarding the cervical adenopathy, she's been instructed many times to get this checked by her family physician and or a general surgeon as this is not part of the cervical injury related to her MVA." (emphasis added) Dr. Grassi advised the Plaintiff to use a rolling backpack to take

7

weight off of her shoulders and back. He stated that she could continue with her academics, and noted that she was not currently working.

(5) On June 17, 2010, the Plaintiff went to Dr. Grassi for another follow-up appointment. Dr. Grassi noted a reduction in pain levels and that the Plaintiff was "active, moving about today." He also found some tightness in her muscles. His clinical impressions included a continuation, but improvement, of whiplash-type syndrome, and myofasciitis (inflammation) of the cervical, thoracic and lumbar spine. Dr. Grassi stated: "I will see her back in three weeks' time, hopefully moving her along so that we can release her for her work. She continues with her college activities."

(6) On September 28, 2010, Dr. Grassi saw the Plaintiff again due to some recurring back and neck pain. He again noted some soft tissue tightness and discomfort. Dr. Grassi stated: "She is working on trying to get her insurance re-established so she can get back to physical therapy. If this is necessary, we can reorder it but at this time I do not see her as needing a long-term formal physical therapy program."

(7) The Plaintiff went to Lehigh Valley Hospital – Muhlenberg on January 10, 2011, complaining of severe neck pain. A neck exam revealed mild soft tissue tenderness in the right and left neck. No restrictions were imposed as to the Plaintiff's activities.

(8) The Plaintiff went to Pennsylvania Pain Specialists, P.C., on March 4, 2011. The report describes tenderness and cervicalgia (neck pain). Pain medicine was prescribed.

(9) The Plaintiff sought emergency medical attention at Pinnacle Health Community Campus on June 13, 2011, complaining of neck and shoulder pain. An examination of the neck revealed: "Trachea midline, no meningeal signs, no jugular venous distention, no cervical adenopathy, no contusions, no ecchymosis, Tenderness entire spine from C1 to T1. No

8

step off[,] no discrete midline tenderness[,] pain is greater in the left trapezius and right trapezius." The diagnosis was "MVC chronic neck pain."

(10) The Plaintiff sought medical attention at Pinnacle Health on August 29, 2011, for other health issues. There is no mention of neck or back pain in the medical report.

(11) The Plaintiff sprained her ankle while at work, for which she received treatment on December 31, 2012. There was no mention of neck or back pain in the medical reports.

(12) On September 17, 2013, the Plaintiff went to Dr. David Weiss, D.O., for an orthopedic Independent Medical Evaluation. Dr. Weiss diagnosed the patient with chronic post-traumatic cervical and lumbosacral strain and sprain; post-traumatic cervical facet joint syndrome; cervical radiculitis; lumbar radiculitis; and chronic post-traumatic cervical and lumbar myofascial pain syndrome.

We next look at the length of the injury. Following the accident, the Plaintiff requested and received a note from her employer which granted her a leave of absence in which to recover from her accident until April 23, 2010. See Motion for Partial Summary Judgment, Exhibit "Q" – letter from Dottie Kurpat, Director of Brookmont/Blough Healthcare Centers, to the Plaintiff (April 6, 2010). The Plaintiff did not return to her job, citing her degree of physical pain, that her position could only be held open for a certain amount of time, and that her employer did not offer light duty for a Certified Nursing Assistant (CNA) position. See Deposition Testimony of Melany Ramos ("N.T."), 23-25. The Plaintiff asserts that her tasks and duties for her new/current employment do not match those required of a CNA, the job she had prior to the motor vehicle collision, due to her neck and back pain. See id.

While there has been a gap in the Plaintiff's employment history, however, she testified during her deposition that she did not seek to secure employment until she moved to Harrisburg

9

after she was evicted from her residence. Id. The Plaintiff also notes that she had difficulty obtaining a job because it took her awhile to obtain another vehicle. See id. at 26:9-10. She did not obtain documentation from a medical provider to excuse her from work until a later date. Id. at 24. Likewise, she did not contact her former employer to request light duty, nor did she file for disability. See id. at 29. During the time period in which the Plaintiff was out of work, she was able to continue with her education by taking a class on campus and a class online. See id.

With regard to treatment, the Plaintiff sought emergency medical attention immediately after the accident, in which her injuries were described as minor. See Motion for Partial Summary Judgment, Exhibit "E." The Plaintiff went to an orthopedic specialist, Dr. Grassi, and to a few physical therapy treatments. See id. at Exhibit "M." Apparently, the Plaintiff could not continue with certain treatments due to her financial circumstances, but sought emergency medical attention as necessary. See Deposition N.T. at 25. As noted above, however, Dr. Grassi found on July 29, 2010, that her cervical adenopathy, which contributed to her pain levels, was not caused by the motor vehicle accident, but rather from her failure to seek treatment from a family doctor or a general surgeon. See Motion for Partial Summary Judgment, Exhibit "K."

Finally, we examine any other relevant considerations regarding the impact of the injury on the Plaintiff's performance of her job functions and engagement in personal activities. The Plaitniff is able to continue with her education and with work, but she has difficulty sitting at times and uses a rolling backpack, according to Dr. Grassi's instructions. See id. Dr. Grassi gave these instructions, however, after noting that the cervical adenopathy experienced by the Plaintiff did not result from the motor vehicle accident. See id.

The Plaintiff alleges that she has difficulty sleeping and requires her children's help to do laundry. See Deposition N.T. at 67:20-25, 10:6-10. She indicates that this injury has had a

10

negative impact on her relationships with her children, as they cannot participate in physical activities that they once enjoyed together, but admits that she can still watch them play sports and spend meaningful time with them. See id. at 68:22-25, 69:1-21. The Plaintiff also alleges that this accident has impacted her mental state by worsening her depression. which she already suffered from prior to the accident after she had her daughter. See id. at 67:1-16. All of these restrictions are self-imposed, as her physicians did not impose any limitations on her activities.

In terms of her employment, the Plaintiff is currently hired as a personal care assistant and a connections club associate at Country Meadows, where she works approximately thirty hours per week. See Deposition N.T. at 14:20-24; 16:22. Her job responsibilities include helping to take care of the residents, participating in activities with them, and assisting residents in getting dressed." Id. at 15:3-6. She also had helped to "develop and implement cognitive support programs or activities for residents with varied stages of dementia and Alzheimer's," a group of patients with whom the Plaintiff enjoys working. Id. at 15:12-14. Further, the Plaintiff has fully participated in furthering her education, obtaining a degree in business administration for Northampton Community College, a bachelor's degree from Central Penn for Health Care Administration in 2013, and attending classes at Eastern University in Harrisburg for Health Care Administration, expecting her degree in 2014. See id. at 10:15-24, 11:3-13, 11:15-22.

In Washington, the Supreme Court of Pennsylvania found that the plaintiff had not sustained a serious injury. Washington, 719 A.2d at 741. In that case, the plaintiff had been diagnosed by the emergency room physician with mild injuries and was discharged after a few hours. Id. He missed a few shifts at his jobs, where he was required to do most of his work on his feet. Id. The court found that the treatment for his injuries was not extensive. Id. Further, the arthritis in his right foot "seem[ed] to have had little or no impact on [the plaintiff's]

11

performance of his job functions and engagement in personal activities." Id. As a result, the Washington court found the impairment resulting from the injury to be *de minimis*. Id.

Similarly, the Plaintiff in the instant case has shown that she has suffered injury, which based upon the medical records generated between the date of the accident and Dr. Grassi's note of June 29, 2010, we would describe to be in the nature of soft tissue injuries to her back and neck. Plaintiff has failed to show that "these injuries resulted in such substantial interference with any bodily function as to permit a conclusion that the injuries have resulted in a serious impact on [her] life for an extended period of time." McGee, 750 A.2d at 915. We note that after the accident, she was discharged from the hospital on the same day with mild injuries. Further, she has failed to present objective medical evidence that any pain that she has experienced during this time period resulted from the motor vehicle accident. In fact, her treating physician, Dr. Grassi, determined that the cervical adenopathy did not result from the motor vehicle accident. Dr. Grassi noted that: "Regarding the cervical adenopathy, she's been instructed many times to get this checked by her family physician and/or a general surgeon as this is not part of the cervical injury related to her MVA." See id.; see also Motion for Partial Summary Judgment, Exhibit "K." It is apparent that complaints about neck pain existed long before the accident. In addition, the treatment for the Plaintiff's pain and symptoms has not been extensive or consistent, but sporadic.

While the Plaintiff chooses to attribute her neck and back pain to the motor vehicle accident, there is no support in the medical records for her claim. Further, the record establishes that the pain does not interfere with her life, other than the claim that the pain makes it difficult to participate in sports with her children. Again, we note that Plaintiff's complaints of occasional stiffness and pain does not prevent her from working, attending school, viewing her

12

children's athletic events, or engaging in her everyday routine. The evidence, when viewed in the light most favorable to the Plaintiff, shows soft tissue injuries from the accident, but the impairment from that injury is clearly *de minimis* in this case. Reasonable minds could not differ here as to the absence of a serious impairment of a body function.

Therefore, we grant the Defendants' Motion for Partial Summary Judgment.

BY THE COURT:

STEPHEN G. BARATTA, P.J.

13