Mark **KELLY**, Appellant,

v.

**Jeffrey ZIOLKO, Cynthia Ziolko and Frank Ziolko, Jr., Appellees.**
(Two Cases).

Superior Court of Pennsylvania.

Argued Nov. 6, 1997.
Filed June 25, 1999.

Gwendelynne Dell, Media, for appellant.

Paul M. Schaffer, Bethlehem, for appellees.

* Judge Hoffman died on June 22, 1998, and therefore did not participate on the within

Before JOHNSON and HOFFMAN,* JJ., and CIRILLO, President Judge Emeritus.

CIRILLO, President Judge Emeritus:

¶ 1 This case is before us on remand from the Pennsylvania Supreme Court; it involves recovery of damages under provisions of the Motor Vehicle Financial Responsibility Law ("MVFRL"). The Pennsylvania Supreme Court reversed our decision affirming the trial court's order granting final judgment in favor of Appellees, Jeffrey Ziolko, Cynthia Ziolko and Frank Ziolko, Jr. Upon remand, we reverse.

¶ 2 In a memorandum decision filed December 15, 1997, we affirmed the trial court's order granting summary judgment in favor of the Ziolkos. Our decision was based, in part, upon the state of the law as enunciated in *Dodson v. Elvey*, 445 Pa.Super. 479, 665 A.2d 1223 (1995) (*en banc*), *reversed and remanded*, 554 Pa. 245, 720 A.2d 1050 (1998). Subsequent to our decision, Kelly filed a petition for allowance of appeal to our supreme court which was granted. On March 23, 1998, the supreme court issued a *per curiam* order reversing our decision. In its order, the supreme court stated that:

> The order of the Superior Court is reversed, and these matters are remanded to that court for reconsideration in light of this court's decision in *Washington v. Baxter*, 553 Pa. 434, 719 A.2d 733 (1998).

In light of the supreme court order, we have reconsidered the case on the merits, and applied the holding of the *Washington* to Kelly's second issue on appeal.

¶ 3 On October 5, 1994, while traveling north on Schuylkill Mall Road in Schuylkill County, Kelly's vehicle collided at an unnamed cross-road with a vehicle driven by Appellee Jeffrey Ziolko. The collision oc-

decision.

curred when Ziolko failed to obey a stop sign which was placed at the intersection. At the moment of impact, Kelly was thrown forward and up, then backwards against the seat; Kelly also struck his knees on the dashboard and his forehead on the metal strip between the roof and the windshield of his automobile. Kelly sustained injuries to his neck, lower back, and suffered numbness in his face and toes.

¶ 4 As a result of the accident, Kelly filed a complaint against the Ziolkos seeking damages, including non-economic damages, under the MVFRL. The Ziolkos, in their Answer and New Matter, alleged that because Kelly had chosen the limited tort option under his automobile insurance policy, he was not entitled to recover non-economic damages. The trial court granted a partial motion for summary judgment in favor of the Ziolkos which effectively dismissed Kelly's claims for non-economic damages. Kelly filed a notice of appeal from this order granting partial summary judgment. The court subsequently ordered that judgment be entered in favor of all defendants with regard to all claims; this court order also incorporated a stipulation between the parties that Kelly's claims for economic damages as well as all other claims against the defendants be voluntarily dismissed.

¶ 5 On appeal, Kelly presents us with the following issues for our review:

(1) Whether the trial court erred in failing to accord any effect to an insurer's violation of section 1791(b) and section 1705(a) of the Motor Vehicle Financial Responsibility Law?

(2) Whether the trial court erred in granting summary judgment to Defendants on the issue of "serious impairment of body function" where the Plaintiff sustained a herniated lumbosacral disc, where the herniation is permanent and will

not improve, where the herniation permanently restricts the Plaintiff's employment capabilities, and where the Plaintiff's orthopedist continues to prescribe invasive medical treatment more than two years after the accident?

(3) Whether the trial court erred in interpreting the phrase "impairment of body function" to mean "impairment of motor function?" [1]

¶ 6 Our standard of review in cases of summary judgment is well settled. This court will only reverse the trial court's entry of summary judgment where there was an abuse of discretion or an error of law. *Merriweather v. Philadelphia Newspapers, Inc.*, 453 Pa.Super. 464, 684 A.2d 137, 140 (1996). Summary judgment is proper when the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits demonstrate that there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Pa.R.C.P. 1035.2, 42 Pa.C.S.A. In determining whether to grant summary judgment a trial court must resolve all doubts against the moving party and examine the record in a light most favorable to the non-moving party. *Id.* Summary judgment may only be granted in cases where it is clear and free from doubt the moving party is entitled to judgment as a matter of law. *Id.*

¶ 7 Kelly first claims that the trial court erred by failing to acknowledge that his insurer, Nationwide Insurance Company, violated sections 1791.1(b) and 1705(a) of the MVFRL with regard to his application for automobile insurance.

¶ 8 Section 1791.1 of the MVFRL states, in part:

(b) **Notice of tort options.**—In addition to the invoice required under subsection (a), an insurer must, at the time of application for original coverage for private passenger motor vehicle insurance and

---

1. We have reorganized Kelly's three issues presented in this appeal for clarity of appellate review.

every renewal thereafter, provide to an insured the following notice of the availability of two alternatives of full tort insurance and limited tort insurance described in section 1705(c) and (d) (relating to election of tort options):

The laws of the Commonwealth of Pennsylvania give you the right to choose either of the following two tort options:

**"Limited Tort" Option**—This form of insurance limits your right and the rights of members of your household to seek financial compensation for injuries caused by other drivers. Under this form of insurance, you and other household members covered under this policy may seek recovery for all medical and other out-of-pocket expenses, but not for pain and suffering or other nonmonetary damages unless the injuries suffered fall within the definition of "serious injury," as set forth in the policy, or unless one of several other exceptions noted in the policy applies.

**"Full Tort" Option.**—This form of insurance allows you to maintain an unrestricted right for yourself and other members of your household to seek financial compensation for injuries caused by other drivers. Under this form of insurance, you and other household members covered under this policy may seek recovery for all medical and other out-of-pocket expenses and may also seek financial compensation for pain and suffering or other nonmonetary damages as a result of injuries covered by other drivers.

If you wish to change the tort option that currently applies to your policy, you must notify your agent, broker or company and request and complete the appropriate form.

75 Pa.C.S.A. § 1791.1(b).

¶ 9 Section 1705 of the MVFRL, which outlines the insurer's financial responsibility requirements in conjunction with an insured's election of tort options states, in relevant part:

Each insurer, not less than 45 days prior to the first renewal of a private passenger motor vehicle liability insurance policy *on and after July 1, 1990,* shall notify in writing each named insured of the availability of two alternatives of full tort insurance and limited tort insurance described in subsections (c) and (d). The notice shall be a standardized form adopted by the commissioner and shall include the following language:

NOTICE TO NAMED INSUREDS

**"Limited Tort" Option.**—The laws of the Commonwealth of Pennsylvania give you the right to choose a form of insurance that limits your right and the right of members of your household to seek financial compensation for injuries caused by other drivers. Under this form of insurance, you and other household members covered under this policy may seek recovery for all medical and other out-of-pocket expenses, but not for pain and suffering or other nonmonetary damages unless the injuries suffered fall within the definition of "serious injury" as set forth in the policy or unless one of several other exceptions noted in the policy applies. *The annual premium for basic coverage as required by law under this "limited tort" option is $_____.*

Additional coverages under this option are available at additional cost.

B. **"Full Tort" Option.**—The laws of the Commonwealth of Pennsylvania also give you the right to choose a form of insurance under which you maintain an unrestricted right for you and the members of your household to seek financial compensation for injuries caused by other drivers. Under this form of insurance, you and other household members covered under this policy may seek recovery for all medical and other out-of-pocket expenses and may also seek financial compensation for pain and suffering and other nonmonetary damages as a result of injuries caused by other drivers. *The annual premium for basic*

*coverage as required by law under this "full tort" option is $ _____.*

75 Pa.C.S.A. § 1705(a)(1) (emphasis added).

¶ 10 In *Donnelly v. Bauer,* 453 Pa.Super. 396, 683 A.2d 1242 (1996),[2] *affirmed,* 553 Pa. 596, 611, 720 A.2d 447, 454 (1998), our court, sitting *en banc,* was faced with the task of interpreting these same two notice provisions of the MVFRL. Essentially, *Donnelly* addressed the issue of when and to whom it was necessary to give premium differentials and cost comparison information regarding the two types of insurance coverage, full and limited tort. In reaching its decision, the *Donnelly* court looked to the language of the applicable MVFRL provisions, examined the legislative history of the MVFRL, considered consumer protection arguments, and even went so far as to reiterate sentiments of the Deputy Commissioner for the Office of Rate and Policy Regulation for the Insurance Department of Pennsylvania. The court ultimately concluded that **new** policy applicants (those who applied for insurance after the July 1, 1990 amendments to the MVFRL) were not entitled to receive notice of the cost comparisons between the premium differentials of the two types of insurance coverage. These new applicants had received the basic information necessary to put them on adequate notice of the rates, and additional information was obtainable upon oral or written request to the insurer.

¶ 11 The *Donnelly* court also found that the heightened notice regarding premium differentials of the cost of limited versus full tort coverage found in section 1705(a)(1) must be given to **existing** policy-holders upon their first policy renewal after the effective date of the amendments to the MVFRL, July 1, 1990. The two classes of insureds ((1) the new applicants applying for insurance after the amendments and (2) the existing policy holders who applied for insurance prior to the amendments), the court found, were not similarly situated. In essence, the existing policy holders who had obtained their original application for insurance prior to the amendments would not be cognizant of the fact that the legislature had now given them the opportunity to choose between two different types of tort coverage, limited or full. They, therefore, would need notice of the two types of coverage in order to be fully informed consumers. By contrast, persons who were applying for insurance after the 1990 amendments would neither need nor be able to compare the difference between the various costs of insurance coverage, having no pre-existing policy cost with which to compare the premiums for the two new coverage options created by the amendments.

¶ 12 Presently, Kelly admits that he originally applied for automobile insurance from Nationwide on September 12, 1990, and, in March of 1992 elected the limited tort option under his policy. Unfortunately, these dates prove fatal to Kelly's claim that he was denied proper section 1705 notice and, therefore, failed to make a valid limited tort election. Be-

**2.** Subsequent to our December 15, 1997 memorandum decision, the Pennsylvania Supreme Court granted *allocatur* and redecided *Donnelly. See Donnelly v. Bauer,* 553 Pa. 596, 720 A.2d 447 (1998). On appeal, the supreme court affirmed the superior court's *en banc* decision; however, it did so upon a different ground, finding that appellants were entitled to receive notices containing cost differentials between full and limited tort coverage when they originally purchased their insurance policies after July 1, 1990, "[h]owever, ... the MVFRL fails to provide a remedy for applicants who have failed to receive the proper notice concerning tort alternatives and cost differentials." *Id.* at 611, 720 A.2d at 454. Because the supreme court did not reverse and remand for our reconsideration of the instant appeal in light of the new *Donnelly* case, we need not revisit the issue in light of this recent decision. Rather, we remain with our analysis and law of the *Donnelly* decision as it existed at the time the appeal was originally before us. We note, however, that the result on appeal if we were to apply either analysis would be the same.

cause Kelly applied for insurance after the effective date of the MVFRL amendments—July 1, 1990—Nationwide was only required to give Kelly notice pursuant to section 1791.1(b), which included a description of the two tort insurance options, the rights restricted under each option, the relevant expenses and types of recovery available under each option, and the legal effect of each option. *Donnelly*, 683 A.2d at 1248. He was *not* entitled to receive notice of the cost comparisons between the premium differentials of the two types of insurance coverage available under the MVFRL. *Id.*

¶ 13 On appeal, Kelly readily concedes that he elected the limited tort option in March of 1992 (after the MVFRL amendments) and that the election form contained the language found in section 1705 save for any cost comparison information. In essence, he admits that the form he signed in order to elect the limited tort option in March contained the requisite notice contained in section 1791.1—the amount of notice to which he was entitled. *See Donnelly*, 683 A.2d at 1245 ("[s]ection 1791.1(b) reads similarly [to section 1705(a)(1) ], but does not include any language pertaining to a *first* renewal on or after July 1, 1990, and it does not include a space to indicate the premium differential"). Accordingly, we find that Kelly was on proper notice of what full tort and limited tort coverage entailed, that he validly elected the limited tort option, and that his right to recovery was restricted to economic damages under the limited tort option. *Donnelly*, 683 A.2d at 1249.

¶ 14 In his next issue, Kelly claims that the trial court erred in determining that the injuries he incurred in his automobile accident were not of the serious nature required in order to recover non-economic damages as a limited tort plaintiff.

**3.** In our *en banc Dodson* decision, we held that the determination of whether a plaintiff has sustained serious bodily injury is a question for the trial judge, and only where there is a substantial dispute of fact on the issue must the question go to the jury. *Dodson*,

¶ 15 In *Washington v. Baxter*, 553 Pa. 434, 719 A.2d 733 (1998), our supreme court rejected the approach our full court had taken in *Dodson v. Elvey*, 445 Pa.Super. 479, 665 A.2d 1223 (1995) (*en banc* ),[3] with regard to the standard to be applied by the trial court for summary judgment motions in limited tort cases. To date only one superior court decision has interpreted and applied the new "serious injury" standard of law as annunciated in *Washington*. In *Furman v. Shapiro*, 721 A.2d 1125 (Pa.Super.1998), our court stated:

> The *Dodson* approach was rejected in *Washington* where our Supreme Court held that the traditional standard for determining whether summary judgment applied was to be used in the limited tort option cases. *Washington*, 719 A.2d at 740. The *Washington* Court ruled that the determination of whether serious injury exists should be made by the jury in all but the clearest of cases. 719 A.2d at 740. In other words, unless reasonable minds [could] not differ as to whether the plaintiff sustained a serious injury, summary judgment is not appropriate. 719 A.2d at 740.

*       *       *

The *Washington* Court acknowledged that neither the law nor the legislative history assists us in defining what "serious impairment of a body function" means for purposes of "serious injury" under the MVFRL. *Washington*, 719 A.2d at 740. Accordingly, the Court expressly adopted the following:

The "serious impairment of body function" threshold contains two inquiries:

What body function, if any, was impaired, because of injuries sustained in a motor vehicle accident?

665 A.2d at 1232. At the point that the evidence proves that the threshold for serious injury has been met, then the jury may decide only issues relating to damages and liability. *Id.*

Was the impairment of the body function serious?

The focus of these inquiries is not on the injuries themselves, but on how the injuries affected a particular body function. Generally, medical testimony will be needed to establish the existence, extent, and permanency of the impairment.... In determining whether the impairment was serious, several factors should be considered: the extent of the impairment, the length of time the impairment lasted, the treatment required to correct the impairment, and any other relevant factors. An impairment need not be permanent to be serious. [footnote omitted]

*Id.* at 1126, *citing Washington*, 553 Pa. at 447–48, 719 A.2d at 740, (*quoting DiFranco v. Pickard*, 427 Mich. 32, 398 N.W.2d 896, 901 (1986)).

¶ 16 In *Washington*, the plaintiff had sustained an impairment to his right foot after an automobile accident. The supreme court found that under the new "serious injury" standard, the plaintiff had failed to present sufficient evidence that would entitle the issue of his impairment to go to a jury at trial. In other words, the plaintiff's injuries were of such a nature that reasonable minds could not have differed as to whether the injuries were serious. Accordingly, the court affirmed the trial court's decision to grant summary judgment in favor of the defendant. *Washington*, 553 Pa. at 448–49, 719 A.2d at 741.

¶ 17 Applying the new "serious injury" standard as announced in *Washington*, we note that all inferences must be resolved in favor of Kelly, the non-moving party, and the matter must be submitted to a jury unless we can say that reasonable minds could not differ on the conclusion that Kelly cannot recover on the evidence adduced.

¶ 18 We first recognize that there is no question Kelly suffered "impairment" of a body function. We reiterate that Kelly sustained injuries to his neck, lower back, and suffered numbness in his face and toes.[4] In order to recover non-economic damages as a limited tort plaintiff, however, the MVFRL also requires that Kelly's impairment be serious. In order to determine whether Kelly's injuries were serious, we must focus on how his injuries affected the functioning of his neck and back, the extent of any impairment he may have suffered, the duration of such impairment, the treatment required to correct any impairment, and any other relevant factors. *Washington, supra* ; *Furman, supra.*

¶ 19 Kelly testified at trial to the following facts regarding the injuries he sustained as a result of the accident: he suffers pain in his neck, back, and knees, and intermittent numbness in two toes on his left foot. Immediately following the accident he was taken to Good Samaritan Hospital's Emergency Room where he was given a soft collar for his neck and discharged less than two hours later in stable condition. *See Washington, supra* (plaintiff treated in hospital emergency room on day of accident and discharged within a few hours, receiving a prescription-strength analgesic). As a result of his injuries, he has undergone a course of physical therapy and taken an MRI which indicated that he suffers from a herniated disk. *See Furman, supra.* He was subsequently put on pain medication and voluntarily sought and received treatments for his injured back from a local chiropractor. He described his daily discomfort in his lower back as a "dull, achy pain." He has knee pains approximately once a week.

¶ 20 Kelly further asserted that his back pain occurs as a result of physical activity or sitting for long periods of time; he has trouble sleeping, cannot run, is unable to walk or sit for longer than 15 minutes, and finds it difficult to play with his child. *See*

---

**4.** Kelly later testified that the numbness he experienced in his face and toes immediately following the accident has since resolved itself.

*Furman, supra.* He also contends that he is no longer able to engage in the following recreational activities: riding his mountain bike, riding his motorcycle, and hunting.

¶ 21 The facts also reveal that Kelly returned to work only three days after the accident; he was able to return to his full work duties within a short period of time. Part of his work duties included lifting drywall and performing carpentry-related tasks. *See Washington* (plaintiff/appellant missed approximately four or five days of full-time job and four of his weekly shifts at part-time job). *Cf. Furman, supra* (plaintiff reduced work status as a manicurist from full-time to part-time due to her injuries). Clinically, Kelly sought followup medical treatment from the effects of the accident *three weeks* following said accident. Furthermore, Kelly testified that the doctor who diagnosed his herniated disk did not recommend surgery. Kelly *voluntarily* sought chiropractic treatment for his back injuries. Kelly's treatment during recovery involved physical therapy, the use of a TENS unit, and exercise.

¶ 22 Kelly remains gainfully employed in his former occupation with minor limitations on lifting heavy objects. Although he claims he is restricted in his recreational activities, he receives no treatment or prescriptive medication for his pain. *Compare McClung v. Breneman*, 700 A.2d 495 (Pa.Super.1997) (our court, in a footnote, stated that because plaintiff had no difficulty engaging in recreational activities, suffered only mild pain when engaging in activity, had rather non-extensive treatment as she recovered, and returned to work without limitations within two months of her accident, she did not suffer serious impairment of body function) *with Furman, supra* (court found issue of plaintiff's back injuries sufficient to go to a jury where plaintiff was unable to walk more than one block at a time, could not lift heavy objects, and was not able to bathe daughter; treatment for back injuries, which included physical therapy, had been discontinued prior to appeal).

¶ 23 With regard to the extent of his impairment, one of Kelly's physicians testified that because he continues to experience pinching sensations in his leg from the herniated disk, this condition is most likely permanent. Depending upon the level of heavy activity he performs in the future, his condition may stabilize or worsen over time.

¶ 24 Applying the facts of this case to the state of the law as espoused in *Washington, supra,* we find that the trial court erred in determining that Kelly did not sustain serious bodily injury and that there was no need for the issue to go to a jury. While this case presents a less clear-cut picture of the seriousness of the plaintiff's injuries than that of the plaintiffs in *Washington* or *Furman*, it is only where "reasonable minds can not differ as to whether the plaintiff sustained a serious injury" that the trial court should grant summary judgment. Accordingly, we reverse and remand this case for trial.[5]

5. Finally, Kelly claims that the trial court improperly focused its serious injury analysis on whether he suffered *motor* impairment, rather than impairment to his *body* function. We find this issue meritless. In its opinion, the trial court offers the following reason for finding that Kelly did not sustain the serious injury necessary to successfully recover non-economic damages as a limited tort plaintiff under the MVFRL:

> Based upon the facts as set forth earlier in this Opinion and viewing the record in the light most favorable to the Plaintiff, we found that there was no substantial dispute of material fact that the Plaintiff has not suffered a "serious impairment of **body** function." Although he sustained injuries which continue to cause pain more than two years after the accident, the evidence shows that his injuries and the pain he suffers have not had a *serious* impact on his life for an extended period of time. Nor have the consequences of those injuries interfered substantially with his normal activities. He might not be able to do some of the things that he did before the accident, but there are a number of things he is able to do, such as lifting 4' by 8' sheets of drywall, shoveling snow, raking leaves and cutting grass, which show that the injuries

¶ 25 Order reversed and case remanded for trial. Jurisdiction relinquished.

have really had only a slight limitation on his normal activities. Therefore, we found as a matter of law that Kelly did not suffer a "serious impairment of **body** function."

The trial court opinion also lists the two threshold questions, cited in *Washington, supra*, that must be answered in order to determine whether a plaintiff has suffered a serious impairment of body function. There is nothing in the record, the briefs, or the trial court's opinion that leads us to believe that the trial court improperly based the focus of this issue on Kelly's motor functions after the accident, rather than the potential impairment to his body functions. Furthermore, Kelly has not directed us to any evidence in the record that supports such an argument. We, therefore, find this issue meritless.