Thurman LONG and Desmond James

v.

Nelson MEJIA and Martha Lucia Garcia and Militza C. Bonet.

Appeal of: Nelson Mejia and Martha Lucia Garcia.

Superior Court of Pennsylvania.

Argued Feb. 14, 2006.
Filed March 30, 2006.

Daniel T. Lewbart, Philadelphia, for appellants.

Bruce M. Schwartz, Bala Cynwyd, for appellees.

BEFORE: TODD, KLEIN, JJ. and McEWEN, P.J.E.

OPINION BY KLEIN, J.:

¶ 1 Nelson Mejia and Martha Lucia Garcia ("defendants") appeal from the judgment entered by Order on February 1, 2005, finding them responsible for the injuries suffered by Thurman Long as a result of an automobile accident. Defendants claim Long's injuries do not, as a matter of law, rise to the level of "serious bodily injury" to breach the limited tort threshold under the Pennsylvania Motor Vehicle Financial Responsibility Law (MVFRL). After a thorough review of the submissions by the parties, the official record and relevant law, and recognizing the facts of this case represent a close call, we affirm.

¶ 2 On July 6, 2001, Long was stopped at an intersection when a car driven by Mejia and owned by Garcia struck another vehicle in the intersection and then hit Long's car. Damages to Long's car totaled $1,720. Long injured his neck, back, left shoulder and wrist in the accident. Long was bound by the limited tort option and a one day non-jury trial was held before the Honorable James Murray Lynn to determine whether Long's injuries, particularly the left wrist injury, rose to the level of being a serious impairment of a bodily function so as to exceed the limited tort threshold.

¶ 3 Judge Lynn credited the testimony of Long and his doctor and determined the wrist injury represented a serious impairment of bodily function and awarded Long $11,720 ($1,720 for property damage and $10,000 for non-economic damages).

¶ 4 Defendants claim that the trial court erred in failing to grant either a judgment notwithstanding verdict (j.n.o.v.) or a new trial. Specifically, they argue the trial court erred as a matter of law in determining Long suffered a serious bodily injury, that the trial court erred in finding Long presented competent medical evidence supporting his claims of Reflex Sympathetic Dystrophy (RSD) and other injuries, and that the verdict was against the weight of evidence and a miscarriage of justice given the state of the evidence presented. As all of these claims are interrelated and reference the quality of the evidence presented, we will address the issues as a whole.

¶ 5 We initially note that defendants have a very high threshold to overcome in order to prevail in their claims.

In reviewing a motion to j.n.o.v., we must view the evidence in the light most favorable to the verdict winner, who must be given every reasonable inference of fact. *Fanning v. Davne*, 795 A.2d 388 (Pa.Super.2002). We may only reverse the denial of a motion for j.n.o.v. if the trial court committed an abuse of discretion or error of law that controlled the outcome of the case. *Id.*

■ ¶ 6 Similarly, when reviewing the denial of a motion for new trial, we must determine if the trial court committed an abuse of discretion or error of law that controlled the outcome of the case. *Somerset Community Hosp. v. Allan B. Mitchell & Assoc.*, 454 Pa.Super. 188, 685 A.2d 141 (1996).

¶ 7 Regarding the evidence that supports the trial court's determination, Long testified that he went to the emergency room on the day of the accident. N.T. Trial, 7/6/04 at 12. He initially treated with Dr. Richard S. Glick, D.O., less than a week after the accident and he presented with complaints of neck, back, shoulder and wrist pain. *Id.* at 13–14. He treated with Dr. Glick for seven months, averaging three visits for physical therapy per week during that time. *Id.* at 15. Because his wrist was not getting better, Long was referred for a bone scan about three months after the accident. *Id.* at 17. Long purchased a wrist brace to help with the injured wrist and he still had occasion to use the brace at the time of trial, three years to the day after the accident. *Id.* at 19. Because of the wrist injury, Long, a construction worker, could no longer control the tools, jackhammers and compressors, he once used. *Id.* at 23. Long had no training to do anything other than be a laborer and the wrist injury limited his

ability to lift anything over 35 pounds. *Id.* at 24. Further, he must be very careful when playing with his grandchildren and nieces and nephews to avoid wrist pain. *Id.* at 25. Changes in weather can produce pain and he cannot work the clutch on his recently purchased dirt bike. *Id.* at 26. On cross examination, Long testified that he had experienced temperature changes in his wrist, the one wrist being colder than the other. *Id.* at 31.

¶ 8 Dr. Glick testified that Long initially complained of multiple injuries to his neck, back, shoulder, and wrist. N.T. Video Testimony, 6/25/04 at 28–29. While all of the other injuries resolved, the wrist injury remained. *Id.* at 37. The continuing problems with the wrist led Dr. Glick to refer Long for a bone scan, the results of which indicated either prior trauma or a variant of RSD.[1] *Id.* at 38. Long reported to Dr. Glick that he had significant problems doing simple things with his left hand, such as wringing out a washcloth or pouring a pitcher of water. *Id.* at 49. The diagnosis of RSD was supported by both the bone scan and Dr. Glick's clinical observations. *Id.* at 43. Finally, Dr. Glick testified Long had a severe problem with his left wrist, one that could be considered permanent and that the injuries complained of were caused by the car accident. *Id.* at 48–50.

■ ¶ 9 An interesting point that has apparently never been directly addressed by our Court has been raised in this issue. The point involves a question of how a particular injury, no matter how permanent, may affect the specific plaintiff and how the trial court should consider that effect. In arguing this point to the trial court, defense counsel stated, "I mean you

---

1. It should be noted that the official record contains no references to any prior wrist injury.

could have a pinky that's been broken or disfigured. That may be permanent, but that's not a serious impairment of a body function." N.T. at 42. In large part we agree with the point defense counsel was attempting to make. We observe that a particular injury, a broken pinky as counsel stated, is not likely to present a significant impairment for the average person. Certainly a lawyer would have little to complain of, in terms of significant impairment, after breaking a little finger. However, if that broken finger is suffered by a person who requires fine motor skills to retain employment, a concert violinist or neurosurgeon for example, then what is of little import to one person becomes hugely significant to another.

¶ 10 While such evidence is clearly relevant to economic damages, which are not affected by limited tort considerations, it may also be relevant in determining whether a plaintiff has suffered a serious impairment of a body function.

■■■ ¶ 11 In *Dodson v. Elvey,* 445 Pa.Super. 479, 665 A.2d 1223 (1995) (*en banc*) (*rev'd on other grounds*), our Court set forth a two part inquiry, modeled on Michigan case law, to determine whether a serious impairment has occurred: 1) what body function was impaired; and 2) was the impairment serious. Importantly, the focus is not on the injury itself, but how the injury affects a particular body function. Then, in determining whether an impairment is serious, the courts should consider several factors: the extent of the impairment, the particular body function impaired, the length of time of the impairment, the treatment required, and any oth-

er relevant factor. *Washington v. Baxter,* 553 Pa. 434, 719 A.2d 733 (1998), which overruled *Dodson,* nonetheless reiterated the two part test and the several factors analysis. Of particular note in *Washington* is the statement: "the injury seems to have had little or no impact on Appellant's performance of his job functions and engagement in personal activities." *Id.* at 741. It appears inherent in this statement that our Supreme Court contemplated the effect of a particular injury on the specific person injured, including how that injury negatively impacted the person's ability to perform his or her chosen profession.

¶ 12 Thus, the broken finger may represent a serious impairment to the violinist, but very few others, and the wrist injury that leads to an inability to control a jackhammer represents a serious impairment to the heavy laborer, but not necessarily to the violinist. This notion, though previously unstated by our Courts, is basically little more than a restatement of the principle that a defendant takes the plaintiff as he finds him.

¶ 13 With these principles in mind and viewing the evidence in the light most favorable to Long,[2] as we must, we cannot conclude that the trial court committed either an error of law or an abuse of discretion in determining Long had suffered a serious impairment of a body function.

■■ ¶ 14 Defendants also argue that the trial court erred in accepting the testimony of Dr. Glick, as the doctor was not qualified to comment on RSD. Defendants cite no law to support this claim.[3] We note

---

**2.** Defendants presented no evidence of their own. They relied on the able cross-examination of both Long and Dr. Glick. While this cross-examination raised a number of salient points, ultimately the trial court accepted Long's evidence and we are in no position to

second guess the trial court's credibility determination.

**3.** In their appellant brief, defendants claim it is suspect that Dr. Glick did not refer Long to specialist to confirm the RSD diagnosis. We

that Pa.R.E. 702 provides a wide latitude for the admission of expert testimony. Dr. Glick is a licensed physician, a general practitioner for the last 18 years who has significant experience in treating accident victims and their injuries. We perceive no error in accepting Dr. Glick's expert opinion.

¶ 15 Finally, because there was no error in accepting Dr. Glick's opinion testimony and the evidence of record supports the trial court's findings, we cannot say there has been a miscarriage of justice in this matter.

¶ 16 Order affirmed.

note, although we do not rely on to make our determination, that Dr. Glick states in his trial deposition he did not refer Long to a specialist because Long had no insurance coverage and Dr. Glick knew of no specialist who would either evaluate or treat Long without coverage. This was not presented to the trial court due to the reference to insurance.