**Stout v. Deleo**

C.P. of Monroe County, no. 970 CIVIL 2007.

*Robert J. Radano,* for plaintiff.

470

*Shawna R. Laughlin,* for defendants.

WALLACH MILLER, *J.,* February 2, 2011—This case stems from a 2005 motor vehicle accident. On February 17, 2005, at approximately 7 p.m., defendant David Fox ("Fox") and Steven A. Stout ("plaintiff") were involved in an automobile accident in Stroud Township, Monroe County. As plaintiff rounded a curve on Route 209, he noticed a multiple-car pileup in the distance. Plaintiff attempted to brake to avoid these vehicles, but the roadway was covered with black ice and snow and plaintiff lost control of his car. His vehicle skidded on the ice, spun out of control, and collided with the guardrail separating the northbound and southbound lanes of travel. Just before plaintiff's vehicle came to a stop, plaintiff was struck from behind by defendant Fox, who had also lost control of his vehicle on the icy roadway.

Defendants Kenneth and Kristen Deleo ("Deleos") owned the car that Fox was driving when the accident occurred. At the time of the accident, plaintiff held a motor vehicle insurance policy with State Farm Mutual Automobile Insurance Company with limited tort coverage.

Plaintiff did not visit the emergency room immediately after the collision, but sought treatment from his family doctor a few days of the accident. Plaintiff, a Stroud Regional police officer, missed his next three shifts and then returned to work with no restrictions. To date, plaintiff has not modified his police cruiser in any way to accommodate his injuries, and has had no difficulty using his firearm or discharging his other duties as a police officer. Plaintiff underwent minor medical treatment

for his injuries and takes over-the-counter Motrin only occasionally to combat his symptoms.

Plaintiff filed a complaint on February 8, 2007, and asserted a claim in negligence against Fox and the Deleos, jointly and severally, sounding in negligence. In his complaint, plaintiff alleged chronic shoulder pain, decreased range of motion and pain in the neck, right arm pain and hand numbness, and back pain, and sought damages in excess of $50,000.00 for both economic and non-economic losses. Defendants filed an answer with new matter on September 26, 2007, which alleged, inter alia, that plaintiff's claim was barred and/or limited by provisions of the Pennsylvania Motor Vehicle Financial Responsibility Law ("MVFRL"), 75 C.S. § 1701, et seq., which pertain to limited tort option coverage.

On November 11, 2010, defendants filed this motion for summary judgment. Defendants argue that, pursuant to 75 C.S. § 1705(d), plaintiff, a limited tort elector, can only recover damages for non-economic losses stemming from the accident if his injuries are deemed a "serious impairment of body function." Defendants point to multiple statements from plaintiff's deposition which, they claim, illustrate that plaintiff's injuries do not rise to the level of "serious impairment of body function" and therefore limit plaintiff's recovery to economic damages. Plaintiff filed a response on November 29, 2010, and argued that the trier of fact, not the trial judge, should decide whether plaintiff has suffered injuries serious enough to pierce the limited tort threshold. Plaintiff also attached medical records to the response in an attempt to demonstrate the severity of his injuries.

We heard oral argument on this matter on January 3, 2011. After careful review of the briefs submitted by the parties and relevant case law, we are ready to decide defendants' motion. For the following reasons, we grant defendants' motion for summary judgment and dismiss plaintiff's claims for non-economic damages.

Pennsylvania Rule of Civil Procedure 1035.2 states that any party may move for summary judgment in whole or in part whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense, and the moving party is entitled to judgment as a matter of law. See also *Gutteridge v. A.P. Green Services, Inc.,* 804 A.2d 643 (Pa. Super. 2002). A trial court may dismiss all or part of a claim after the close of pleadings through summary judgment. *Wilson v. El-Daief,* 600 Pa. 161, 964 A.2d 354 (2009). To prevail on amotion for summary judgment, the moving party bears the burden of proving that no genuine issues of material fact exist as to a necessary element of the cause of action or defense. *Rush v. Philadelphia Newspapers, Inc.,* 732 A.2d 648 (Pa. Super. 1999). The court must view the record in the light most favorable to the party opposing the motion for summary judgment and resolve all doubts as to the existence of genuine issues of material fact against the moving party. *Potter v. Herman,* 762 A.2d 1116 (Pa. Super. 2000). The trial court may only enter summary judgment when the facts are so clear that reasonable minds cannot differ. *Basile v. H & R Block, Inc.,* 563 Pa. 359, 761 A.2d 1115 (2000).

The party opposing a motion for summary judgment may not rest on mere allegations or denials in the pleadings, but must identify evidence of a dispute of material fact

presented by the record in the case. Pa. R.C.P. 1035.3. The record, for the purposes of amotion for summary judgment, consists of pleadings, depositions, answers to interrogatories, admissions, affidavits, and reports signed by an expert witness that would, if filed, comply with Rule 4003.5(a)(1). Pa. R.C.P. 1035.1.

Automobile insurers must offer two alternatives — full tort insurance and limited tort insurance — to prospective vehicle insurance purchasers pursuant to 75 Pa. C.S. § 1705 and the MVFRL. An insured who elects limited tort coverage can pursue only partial recovery against others as a result of a motor vehicle accident, with some exceptions. *Id.* Specifically, Section 1705(d) provides:

Each person who elects the limited tort alternative remains eligible to seek compensation for economic loss sustained in a motor vehicle accident as the consequence of the fault of another person pursuant to applicable tort law. Unless the injury sustained is a serious injury, each person who is bound by the limited tort election shall be precluded from maintaining an action for any non-economic loss, except that:

(1) An individual otherwise bound by the limited tort election who sustains damages in a motor vehicle accident as the consequence of the fault of another person may recover damages as if the individual damaged had elected the full tort alternative whenever the person at fault:

(i) is convicted or accepts Accelerated Rehabilitative Disposition (ARD) for driving under the influence of alcohol or a controlled substance in

that accident;

(ii) is operating a motor vehicle registered in another state;

(iii) intends to injure himself or another person, provided that an individual does not intentionally injure himself or another person merely because his act or failure to act is intentional or done with his realization that it creates a grave risk of causing injury or the act or omission causing the injury is for the purpose of averting bodily harm to himself or another person; or

(iv) has not maintained financial responsibility as required by this chapter, provided that nothing in this paragraph shall affect the limitation of section 1731(d)(2) (relating to availability, scope and amount of coverage).

(2) An individual otherwise bound by the limited tort election shall retain full tort rights with respect to claims against a person in the business of designing, manufacturing, repairing, servicing or otherwise maintaining motor vehicles....

(3) An individual otherwise bound by the limited tort election shall retain full tort rights if injured while an occupant of a motor vehicle other than a private passenger motor vehicle. 75 Pa. C.S. § 1705(d).

Plaintiff does not contend that any of the listed exceptions apply to plaintiff's cause of action against the named defendants in the present case. Plaintiff argues, however, that he has suffered "serious injury" and is

therefore permitted to seek recovery for non-economic as well as economic damages from defendants.

Section 1702 of the MVFRL defines "serious injury" as "[a] personal injury resulting in death, serious impairment of body function or permanent serious disfigurement." 75 Pa. C.S. § 1702. Both plaintiff and defendants agree that plaintiff does not suffer from "permanent serious disfigurement" as a result of the accident, and plaintiff did not die from injuries sustained in the accident. The court, then, must determine whether plaintiff has suffered "serious impairment of body function" such that plaintiff's claim for non-economic damages is not precluded by Section 1705(d) of the MVFRL. If we determine that plaintiff has suffered serious impairment of body function, then plaintiff may seek both economic and non-economic damages despite plaintiff's status as a limited tort elector; if not, then summary judgment is appropriate and plaintiff may not seek non-economic damages from defendants.

Both the Pennsylvania Superior Court and the Pennsylvania Supreme Court have clearly defined the parameters for determining whether a litigant has suffered serious impairment of body function. See *Dodson v. Elvey,* 665 A.2d 1223 (Pa. Super. 1995); *Washington v. Baxter,* 553 Pa. 434, 719 A.2d 733 (1998). The proper analysis, derived from the Supreme Court of Michigan in *DiFranco v. Pickard,* 398 N.W.2d 896 (Mich. 1986), contains two inquiries:

a) What body function, if any, was impaired because of injuries sustained in a motor vehicle accident?

b) Was the impairment of the body function serious? The focus of these inquires is not on the

injuries themselves, but on how the injuries affected a particular body function. Generally, medical testimony will be needed to establish the existence, extent, and permanency of the impairment. In determining whether the impairment was serious, several factors should be considered: the extent of the impairment, the length of time the impairment lasted, the treatment required to correct the impairment, and any other relevant factors. An impairment need not be permanent to be serious. *Dodson*, 665 A.2d at 1233-34, *Washington*, 553 Pa. at 447-48, 719 A.2d at 740 (citing *DiFranco*, 398 N.W.2d at 901).

Pennsylvania courts have consistently adhered to this analytical framework in subsequent cases when considering whether a litigant's injuries rise to the level of a "serious impairment of body function." See *Robinson v. Upole*, 750 A.2d 340 (Pa. Super. 2000); *McGee v. Muldowney*, 750 A.2d 912 (Pa. Super. 2000); *Long v. Mejia*, 896 A.2d 596 (Pa. Super. 2006); *Graham v. Campo*, 990 A.2d 9 (Pa. Super. 2010). When considering the severity of a litigant's injuries for this purpose, the court should focus not on the injuries themselves, but on their effect on body function. See *Washington*, 553 Pa. at 449, 719 A.2d at 741; *Kelly v. Ziolko*, 734 A.2d 893 (Pa. Super. 1999). Furthermore, in *Washington v. Baxter*, the Pennsylvania Supreme Court departed from *Dodson v. Elvey* and held that:

the legislature...indicated that the traditional summary judgment standard was to be followed and that the threshold determination [of whether a litigant has suffered a serious injury] was not to be made routinely by a trial court judge...but rather was to be left to a

jury unless reasonable minds could not differ on the issue of whether a serious injury had been sustained. *Washington*, 553 Pa. at 446-47, 719 A.2d at 740.

In so holding, the Supreme Court removed the threshold determination from the trial judge in all but the clearest of cases. *Id.*

Our higher courts have clarified the proper standard for this threshold determination in a series of cases. In *Washington*, supra, the Pennsylvania Supreme Court affirmed summary judgment against the plaintiff limited tort elector after the court determined that the plaintiff had not presented sufficient evidence of serious impairment of body function. *Washington*, 553 Pa. at 437, 719 A.2d at 735. As a result of a motor vehicle accident, the plaintiff in *Washington* suffered injuries which included cuts and contusions, mild sprain or strain to the right foot, and cervical sprain or strain. *Id.* The plaintiff was treated at a hospital emergency room and discharged the same day as the accident with prescription strength Ibuprofen. *Id.* According to plaintiff's deposition, plaintiff was unable to return to one of his jobs for four to five days and to his other, part-time job, for one to two months. *Id.* at 447-48, 719 A.2d at 735. Plaintiff testified that the injury caused him intermittent pain and that he often experienced ankle swelling. *Id.* at 439, 719 A.2d at 736. He stated that he could perform his normal job responsibilities as well as before the accident. *Id.* Plaintiff's only limitation as a result of the accident was that he needed to use a riding mower instead of a normal lawn mower. *Id.*

As noted above, the Supreme Court in *Washington* overruled *Dodson v. Elvey*, 665 A.2d 1223 (Pa. Super.

1995), and held that trial courts should follow the traditional summary judgment standard and leave the threshold determination of whether plaintiff has sustained "serious impairment of body function" to the jury unless reasonable minds could not differ. *Washington*, 553 Pa. at 446-47, 719 A.2d at 740. The court also applied the dual-inquiry framework and determined that plaintiff's right foot was impaired as a result of the accident, but, despite plaintiff's evidence to the contrary, "reasonable minds could not differ on the conclusion that [plaintiff's] injury was not serious." *Id.* at 448, 719 A.2d at 740-41. The Supreme Court noted that plaintiff missed only four or five shifts at both his full- and part-time jobs, plaintiff's injuries were diagnosed as mild, treatment was not extensive, and the injury "seem[ed] to have had little or no impact on [plaintiff's] performance of his job functions and engagement in personal activities." *Id.* at 449, 719 A.2d at 741.

Similarly, in *McGee v. Muldowney*, 750 A.2d 912 (Pa. Super. 2000), the Superior Court affirmed the trial court's grant of summary judgment for the defendant and held that plaintiff had not suffered "serious impairment of body function" sufficient to pierce the limited tort threshold for non-economic damages. The court chronicled plaintiff's admissions at or before trial: plaintiff visited the emergency room after the accident, received a prescription for Tylenol, and was discharged with a diagnosis of cervical strain and sprain; plaintiff did not seek further medical attention until ten days later with complaints of back, neck, and shoulder pain; a subsequent x-ray examination of plaintiff's right shoulder was normal; plaintiff completed a course of physical therapy; an MRI of plaintiff's shoulder found conditions consistent with tendonitis or degeneration,

but was otherwise unremarkable; plaintiff only sought treatment once more for his injuries from the accident, about one year after the accident; and plaintiff had been employed full-time as an electrician starting about 14 months after the accident and through until trial, and plaintiff's employer was unaware that plaintiff shunned certain lifting tasks. *McGee*, 750 A.2d at 914-15.

The Superior Court in *McGee* held that, although plaintiff established that he suffered some injury, plaintiff did not establish through medical evidence that he suffered serious impairment of body function. According to the court, reasonable minds could not argue that "these injuries resulted in such substantial interference with any bodily function as to permit the conclusion that the injuries have resulted in a serious impact on [plaintiff's] life for an extended period of time." *Id.* at 915. Specifically, plaintiff "failed to present objective medical evidence as to the degree of any impairment and extent of any pain suffered" and plaintiff's allegations, "in the absence of objective medical evidence, do not permit a finding that [plaintiff] suffered the requisite 'serious injury.'" *Id.* For these reasons, the court held that the threshold determination could not be left to the jury and was properly decided by the trial court. *Id.*

Conversely, in *Long v. Mejia*, 896 A.2d 596 (Pa. Super. 2006), our Superior Court affirmed the trial court's order which held defendants responsible for plaintiff's injuries because plaintiff's injuries rose to the level of "serious impairment of body function" as contemplated by the MVFRL. In *Long*, the plaintiff visited the emergency room on the day of the accident and also treated with a

doctor less than a week later, complaining of neck, back, shoulder, and wrist pain. *Long*, 896 A.2d at 599. The plaintiff completed a course of physical therapy over seven weeks, but still had to wear a wrist brace on occasion at the time of trial three years after the accident. *Id.* Plaintiff's doctor testified that plaintiff had a "severe problem with his left wrist, one that could be considered permanent and that the injuries complained of were caused by the car accident." *Id.* Plaintiff had to be careful when playing with his grandchildren and nieces to avoid wrist pain. *Id.* Importantly, because of his wrist injury, plaintiff could no longer control the tools, jackhammers, and compressors he once used as a construction worker. *Id.*

The Superior Court affirmed the order of the trial court, "recognizing the facts of this case represent a close call," and emphasized certain language from *Washington v. Baxter*. *Id.* at 598. The court in *Long* wrote that "our Supreme Court contemplated the effect of a particular injury on the specific person injured, including how that injury negatively impacted the person's ability to perform his or her chosen profession." *Id.* at 600 (quoting *Washington v. Baxter*, 553 Pa. at 449, 719 A.2d at 741: "the injury seems to have had little or no impact on appellant's performance of his job functions and engagement in personal activities."). Since the plaintiff in the case worked as a heavy laborer, plaintiff's wrist injury seriously inhibited his ability to perform his chosen profession. Therefore, the Superior Court affirmed the ruling of the trial court that found that plaintiff's injuries rose to the level of "serious impairment of body function" in order to pierce the limited tort threshold.

In *Kelly v. Ziolko*, 734 A.2d 893, (Pa. Super. 1999), the Superior Court reversed an order of the trial court which granted partial summary judgment for the defense for plaintiff's claims for non-economic damages; the court found that the issue of whether plaintiff suffered serious impairment of body function should have been decided by the jury. *Kelly*, 734 A.2d at 900. After the accident, plaintiff suffered pain in his neck, back, and knees, and intermittent numbness in two toes on his left foot. *Id.* at 899. Plaintiff presented to the emergency room shortly after the accident and was discharged less than two hours later with a soft collar for his neck. *Id.* Plaintiff undertook a course of physical therapy and submitted to an MRI which showed that he suffered from a herniated disk. *Id.* Plaintiff was placed on pain medication and voluntarily sought treatment for his back from a chiropractor. *Id.* As a result of injuries sustained in the accident, plaintiff had trouble sleeping, could not run, could not sit or walk for longer than 15 minutes, and found it difficult to play with his child. *Id.* Plaintiff also had to cease certain recreational hobbies, such as mountain biking, motorcycling, and hunting. *Id.* at 900. Plaintiff missed only a few work shifts before he returned to work full time and, at trial, worked for the same employer with only minor limitations on lifting heavy objects. *Id.* One of plaintiff's physicians, however, testified that plaintiff's herniated disk was likely a permanent condition. *Id.*

The court in *Kelly* reversed the trial court's ruling that plaintiff did not suffer serious injury and remanded the case for trial, recognizing that the facts of the case presented a "less clear-cut picture of the seriousness of the plaintiff's

injuries" than in other cases such as *Washington v. Baxter.* *Id.* The Superior Court emphasized the permanence of plaintiff's injuries, the treatment required to correct them, and the fact that plaintiff was severely limited in much of his personal life. See *Id.* at 899-01.

Turning to the facts of our case, we note that our inquiry is essentially limited to the contents of plaintiff's deposition on February 4, 2009 and the allegations in the pleadings. Plaintiff has not filed any affidavits signed by his treating physicians nor has plaintiff identified any experts he plans to call at trial. The record does not contain plaintiff's answers to defendants' interrogatories, initially served on July 31, 2007, nor any admissions relevant to the current motion. Therefore, our analysis, per Rule 1035.1, is constricted to the pleadings and depositions in the record.

The record before us reveals the following pertinent information regarding plaintiff's injuries and subsequent treatment following the motor vehicle accident between plaintiff and defendant Fox.

Plaintiff did not recall experiencing any pain at the scene of the accident. [plaintiff's deposition of 2/4/09 at 33 (hereinafter "deposition")]. Plaintiff started to notice pain in his neck, right hip, and left shoulder shortly after the accident. [Deposition at 34] Plaintiff never presented at the hospital for his injuries; he first visited his family doctor at Wind Gap Family Practice four days after the accident complaining of left shoulder pain. [Deposition at 16, 29,31] In October of 2005, eight months after the accident, plaintiff experienced pain under his right shoulder

blade and right hand numbness and began treating with Dr. Lycette, a neurosurgeon. [Deposition at 41] Plaintiff saw Dr. Lycette twice, or "maybe" three times, and Dr. Lycette ultimately recommended that plaintiff have physical therapy for neck pain. [Deposition at 42] Plaintiff cannot recall where he had the physical therapy in 2006, his only therapy program since the accident. [Deposition at 43] Plaintiff's family doctor ordered an MRI of plaintiff's neck in 2006; his doctors ordered no further testing. [Deposition at 43-44] Plaintiff never visited a chiropractor for his back pain either before or after the accident. [Deposition at 14] Plaintiff's doctors never prescribed any medication for his complaints, and plaintiff stated that he "might take Motrin" to deal with his ailments. [Deposition at 51, 63] Since the accident, plaintiff has complained of neck and shoulder pain and right hand pain and numbness. [Deposition at 42-44; 66-67] Plaintiff also claims that he recently returned to a pain management specialist and has received injections to deal with the pain. [Plaintiff's response to defendants' motion for summary judgment, 10/29/10, ¶ 31]

As a consequence of his injuries, plaintiff experiences numbness in his right hand when sitting in his police cruiser for long periods of time and while cycling. [Deposition at 46-47] Numbness sets in when plaintiff keeps his hand still for an extended period, and he explained that "I constantly have to readjust while I'm sitting there." [Deposition at 46-47] Plaintiff testified that in the years after the accident, he severely curtailed his competitive cycling; he also stated that as a result of his hand numbness, he does not cycle recreationally anymore. [Deposition at 48, 54-57] Plaintiff testified that he does not sleep as well

as before the accident and takes many more sick days than he used to. [Deposition at 59-60]

He also asserted that he gets common colds much more often now than before the accident. [Deposition at 60] Plaintiff does not pursue winter sports, such as skiing and ice skating, because he is "not in shape anymore" and he feels pain after strenuous physical activity. [Deposition at 61-62] More generally, plaintiff does not exercise because "[i]t hurts. I don't sleep well. Then the next day I wake up stiff. My neck hurts. I don't sleep for days after I work out." [Deposition at 62] As a result, plaintiff now weighs 210 pounds, up from 172 pounds at the time of the accident. [Deposition at 61]

On the other hand, plaintiff only missed three days of work after the accident took place. [Deposition at 58] Neither plaintiff nor plaintiff's superiors modified plaintiff's police cruiser in any way to accommodate for plaintiff's injuries; nor have plaintiff's job responsibilities been modified at all. [Deposition at 47,59] Plaintiff has had no problems handling or discharging his firearm. [Deposition at 48] Plaintiff's doctors placed no restrictions on plaintiff's physical or work activity at any time after the accident. [Deposition at 52] Plaintiff, who lives alone, has never asked for help in maintaining his home and yard. During his deposition, plaintiff admitted that he has never reached the point where he could not use his right arm due to the pain and numbness, except for one occasion in 2005 that led him to visit Dr. Lycette in the first place. [Deposition at 45] And although he testified that he does not cycle at all anymore, plaintiff competed in the Ontario Spring Classic, a 20-mile race, weeks after the accident.

[Deposition at 52-53]

The first part of the "serious impairment of body function" analysis, from *Dodson* and *Washington*, requires us to identify the body function that was impaired by the accident. Here, plaintiff initially suffered from neck stiffness and pain, right hip pain, and left shoulder pain. Plaintiff's complaint and his deposition testimony establish that plaintiff seeks to recover for right hand numbness and pain, shoulder pain, and neck pain.

The second prong of the analysis asks whether the impairment was serious. To determine whether the impairment is serious, the trial court must consider the extent of the injuries, the length of the injuries, any treatment required, and other relevant factors. See *Dodson*, 665 A.2d at 1233-34; *Washington*, 553 Pa. at 447-48, 719 A.2d at 740. According to the evidence contained in the record, plaintiff suffers from slight numbness in his hand, pinching in his right shoulder blade, pain in his right arm, and a burning sensation in his neck. We cannot say that plaintiff has been injured to a great extent, and we are mindful that "[t]he focus of these inquiries is not on the injuries themselves" but on the effect of the injury on body function. See *Washington v. Baxter*, 553 Pa. at 447-48, 719 A.2d at 740. Additionally, plaintiff has suffered from these injuries from the date of the accident through today, almost six years later. We do not know, however, whether plaintiff's injuries represent a permanent condition, like the plaintiffs in *Long* and *Kelly*, because plaintiff has not presented any objective medical evidence to that effect. Furthermore, plaintiff only visited doctors on a few occasions and underwent one course of physical therapy.

Plaintiff also testified that he does not take any medications for his pain, unlike the plaintiff in *Kelly*, except for over-the-counter Motrin infrequently.

Other relevant factors lead us to conclude that plaintiff does not suffer from a "serious impairment of body function." For one, plaintiff has not been limited at all in his job performance since the accident. Plaintiff missed only three days of work immediately following the accident, and has not subsequently missed any shifts due to his injuries. Plaintiff did not modify his police cruiser to accommodate his condition, and he has not experienced any difficulty handling or firing his weapon. Since plaintiff returned to work three days after the accident, he has continued to perform his job as a police officer without restriction. As noted above, our Supreme Court has placed special emphasis on the effect of a litigant's injuries on that person's ability to perform his or her chosen profession. See *Washington*, 553 Pa. at 449, 719 A.2d at 741; *Long*, 896 A.2d at 600. In the case at bar, plaintiff's injuries have had virtually no impact on plaintiff's job performance, except that plaintiff may readjust his right arm when sitting in his cruiser for long periods of time.

Similarly, plaintiff's personal restrictions are relatively minor, and mostly self-imposed. None of plaintiff's doctors specifically directed plaintiff cease physical activity. Rather, plaintiff restricted his physical activity of his own accord and now complains of stiffness, soreness, and poor sleep after he exercises. He claims that he has gained weight because of his physical limitations resulting from the accident. Plaintiff, however, has not supplemented the record with any objective medical evidence tending

to show that plaintiff actually suffers from serious pain while exercising or that plaintiff's own restrictions on his activities are justified by his condition. Like the plaintiff in *McGee*, plaintiff has established that he suffered some injuries, but has not adequately proven that "these injuries resulted in such substantial interference with any bodily function as to permit a conclusion that the injuries have resulted in a serious impact on his life for an extended period of time." *McGee*, 750 A.2d at 915.

The question for the court is whether plaintiff has shown that he suffered a serious injury such that a body function has been seriously impaired. Although plaintiff has introduced evidence that he has suffered, and continues to suffer, pain in his shoulder and neck and numbness in his right hand, plaintiff has failed to show that these injuries have had such an impact on him as to constitute "serious impairment of body function" as contemplated by the MVFRL and Pennsylvania case law. While mindful of the fact that this threshold determination should not be made by the trial court in all but the clearest cases, and considering the evidence in the light most favorable to plaintiff, we hold that reasonable minds could not differ on the conclusion that plaintiff has not suffered a serious injury. We therefore grant defendants' motion for summary judgment and dismiss plaintiff's claims for non-economic damages.

Accordingly, we enter the following order.

## ORDER

And now, February 2, 2011, defendants' motion for summary judgment is granted.